**Richard Walter MARBEN, Petitioner, Appellant,**

v.

**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, Respondent.**

**No. 50173.**

Supreme Court of Minnesota.

May 23, 1980.

Rehearing Denied Aug. 1, 1980.

Genty & Eggert and Richard D. Genty, Winsted, for appellant.

Warren Spannaus, Atty. Gen., and Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before ROGOSHESKE, TODD, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from an order of the Seventh Judicial District Court which sustained the revocation of appellant's driving privileges for his refusal to submit to testing requested pursuant to Minn.Stat. § 169.-123, subd. 2 (1976), commonly known as the "Implied Consent Law." We affirm.

On June 23, 1978, at about 7:30 p. m., Minnesota State Patrol Trooper Curran Larson was on duty near the intersection of Interstate 94 and Highway 23 in Stearns County. At that time, while stopped with a motorist on I-94, Larson received a CB radio communication from an unidentified trucker. According to Larson, the trucker stated that he could see the squad car parked by the freeway and asked Larson to "check out a vehicle that had been following him [the trucker] for the last 60, 70 miles * * * just about under his trailer * * *." The trucker also informed the trooper that the vehicle in question was then exiting from I-94 onto Highway 23.

Larson pursued the subject vehicle, whose driver and lone occupant was later identified as Richard Marben, appellant herein. The car turned right on Highway 23 and traveled a brief distance on that highway until it pulled onto a median crossing and stopped. Although there is some conflict in the testimony regarding the stopping of Marben's car,[1] Larson admits that he saw no improper driving by Marben. Larson parked his squad car next to Marben's vehicle and requested that Marben walk toward the patrol car. As Marben approached the police vehicle, Larson observed that his walk was unsteady and his eyes were watery and bloodshot. Larson also noticed that the odor of alcohol was present.

Larson then had Marben perform some roadside physical coordination tests, after which the trooper concluded that Marben was under the influence of alcohol. Marben was asked by Larson whether he had been drinking, to which he responded that he had had a "couple of beers" in Alexandria. Larson placed Marben under arrest for driving while under the influence of alcohol and proceeded to read him the implied consent advisory form. Marben was offered

---

1. Marben testified that he pulled into the median and stopped because he saw the red lights on the trooper's squad car flashing. Larson asserted, however, that the red lights were turned on after Marben pulled into the median and stopped.

tests of his blood or breath, but he refused them, claiming that "it [the testing] was stupid."

On August 23, 1978, respondent Department of Public Safety sent Marben notice of the proposed revocation of his driving privileges for his refusal to submit to testing when asked to do so under the Implied Consent Law. Marben requested a hearing on the matter, which was held before the Stearns County Court on February 1, 1979, and resulted in an order sustaining the proposed revocation. Thereafter, the Stearns County District Court heard the case de novo, and by order dated April 20, 1979, affirmed the revocation of Marben's driving privileges.

On appeal, Marben claims that the Implied Consent Law was illegally invoked against him for two reasons: (1) that the initial stop of Marben's vehicle was inconsistent with Fourth Amendment protections and consequently the subsequent application of the Implied Consent Law to him was improper; and (2) that, in any event, the trooper did not properly arrest Marben and thus testing for alcohol content was not authorized by the Implied Consent Law. We find both these contentions unpersuasive.

■■■ 1. It is well settled that in accordance with the Fourth Amendment of the United States Constitution a police officer may not stop a vehicle without a reasonable basis for doing so. Consistent with the principles set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officer must have a specific and articulable suspicion of a violation before the stop will be justified. *E. g., Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Engholm*, 290 N.W.2d 780 (Minn.1980); *State v. Johnson*, 257 N.W.2d 308 (Minn.1977); *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975). In *Engholm, supra, Johnson, supra*, and *McKinley, supra*, this court quoted with approval the following summarization of the applicable standard as adopted by the court in

*People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975):

It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, *supra*.)

Also, the factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *People v. Tooks*, 403 Mich. 568, 271 N.W.2d 503 (1978).

■■ In this case, we believe that, as a result of the trucker's communication with Larson, the trooper had a specific and articulable suspicion of a violation so as to warrant a stop of Marben's vehicle. The informant was apparently a private citizen and thus is presumed to be reliable. *See, State v. Phelps*, 297 Minn. 61, 209 N.W.2d 780 (1973); *People v. Tooks, supra*. Moreover, due to the trucker's reference to the location of Larson's squad car and the vehicle in question, the trooper was able to verify that the trucker was in the area, and in close proximity to the subject car. This enhanced the reliability of the trucker's information. Consequently, based on the informant's claim of tailgating,[2] the trooper had a specific and articulable suspicion that a traffic violation had occurred and thus the stop of Marben's vehicle was proper.

2. Under Minn.Stat. § 169.123, subd. 2 (1976), a peace officer may test a driver's

---

2. Minn.Stat. § 169.18, subd. 8(a) (1978), prohibits a driver of a motor vehicle from following

another vehicle "more closely than is reasonable and prudent * * *."

blood, breath or urine for the purpose of ascertaining the driver's alcohol content, in the following situations:

> The test may be administered when the officer has reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence of an alcoholic beverage, and one of the following conditions exist: (1) the said person has been *lawfully placed under arrest* for alleged commission of the said described offense in violation of section 169.121 [which includes driving while under the influence of alcohol], or an ordinance in conformity therewith; or, (2) the person has been involved in a motor vehicle collision resulting in property damage, personal injury, or death. The test may also be administered when the officer has reason to believe that a person was driving or operating a motor vehicle in violation of section 169.121 or an ordinance in conformity therewith and the person has either refused to take the *preliminary screening test* provided for by section 169.121, subdivision 1, or such preliminary screening test was administered and recorded a blood alcohol level of .10 percent or more by weight of alcohol.[3]

(Emphasis added.) Marben claims that since he was not lawfully placed under arrest, and no preliminary screening test was administered, the Implied Consent Law cannot be invoked against him. We conclude, however, that Marben was properly arrested.

■ Pursuant to Minn.Stat. § 629.34(1) (1978), a peace officer may, without a warrant, arrest a person for a misdemeanor[4] when the offense is "committed or attempt-

ed in his [the officer's] presence." *See, also State v. Armstrong,* 292 Minn. 471, 194 N.W.2d 293 (1972). In this case, the trooper saw Marben driving a vehicle and, after a proper stop, immediately thereafter observed that he was under the influence of alcohol. Under these circumstances, it was proper for the officer to determine that Marben had been driving while under the influence of alcohol in the presence of the officer, and consequently the arrest was lawfully made under § 629.34(1). *See, State v. Barber,* 308 Minn. 204, 241 N.W.2d 476 (1976).

■ Contrary to Marben's assertion, we believe that the Implied Consent Law does not require the administration of a preliminary screening test where the officer ascertains from his own observations that the driver is under the influence of alcohol. Rather, the preliminary screening test appears to be intended to be utilized in situations where the officer, after observing the driver, is unsure whether the driver is under the influence of alcohol. *See, State v. Grovum,* 297 Minn. 66, 209 N.W.2d 788 (1973). Since Marben does not challenge the officer's determination that Marben was under the influence of alcohol, we hold that the arrest was proper and, consequently, the Implied Consent Law was validly invoked against Marben.

Affirmed.

---

3. Section 169.122, subd. 2, was amended by 1978 Minn.Laws, ch. 727, § 3 (effective date September 1, 1978), to read, in relevant part, as follows:

> The test may be required of a person when an officer has reasonable and probable grounds to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 and one of the following conditions exist: (1) the person has been lawfully placed under arrest for violation of section 169.121, or an ordinance in conformity therewith; or (2) the

person has been involved in a motor vehicle accident or collision resulting in property damage, personal injury, or death; or (3) the person has refused to take the screening test provided for by section 169.121, subdivision 6; or (4) the screening test was administered and recorded an alcohol concentration of 0.10 or more.

4. Driving while under the influence of alcohol is proscribed as a misdemeanor under Minn. Stat. § 169.121, subd. 1 (1978).