Timothy Jeffrey SCHWARTZ,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C3-87-2218.

Court of Appeals of Minnesota.

May 3, 1988.

Fred L. Neff, Bruce Hiller, Edina, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by WOZNIAK, C.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent's driver's license was revoked for driving while under the influence. He challenged the revocation, based in part upon the sufficiency of the basis for the initial stop of his vehicle. The referee recommended sustaining the revocation, but the district court rescinded the revocation. The Commissioner of Public Safety appeals. We affirm.

## FACTS

Officer Ricky Donald Karnitz stopped respondent's vehicle based upon a dispatcher's message and on his observation of respondent making a legal U-turn after missing a turn. The dispatcher advised that the call came from a pay telephone at a particular gas station, but the officer did not know whether the informant told the dispatcher or whether it was a "911" call. After respondent got out of his vehicle, Karnitz observed signs of intoxication, and invoked the implied consent law. Respondent took an Intoxilyzer test, which showed an alcohol concentration of .11. After his license was revoked, Schwartz petitioned for judicial review, challenging the legality of the stop.

The referee recommended finding that Officer Karnitz received a radio dispatch call of a possible drunk driver "all over the road" northbound on Highway 169 in a black Ford King Cab pick-up truck, license number LOU 776, and that he observed a vehicle matching this description pass his vehicle, make a U-turn and come back to the intersection. He concluded that the officer had articulable grounds to make the stop based upon the citizen complaint of driving "all over the road" together with his observation of respondent's apparent inattentive driving in missing a turn, which was consistent in the officer's experience with an intoxicated driver. The credibility of the anonymous tip was provided by the citizen's willingness to identify his location. The referee recommended sustaining the revocation.

Respondent moved that the trial court reject the recommendations and rescind his license revocation. The court concluded Karnitz based the stop solely on the information received from the dispatcher, which was not enough to form the basis for a reasonable suspicion. It noted Karnitz did not observe any bad driving, and that the legal U-turn was not indicative of driving while under the influence. The court found that Karnitz was told by the dispatcher the vehicle was being driven erratically, but that nothing in the record indicated the exact wording of the anonymous caller, and no transcript of the report was produced. The record did not show whether the dispatcher was told the vehicle was "all over the road," whether this was an embellishment by the dispatcher, or what the informant saw which led him to believe there may have been a drunk driver on the road. The court concluded the officer did not have specific and articulable facts which warranted a stop, and the tip did not provide even the most minimal indicia of reliability of the informant. It rescinded the revocation of respondent's driver's license.

The Commissioner of Public Safety appeals from the trial court order rescinding the revocation.

## ISSUE

Did the officer articulate specific facts which, taken together with rational inferences from those facts, created a reasonable suspicion warranting the stop?

## ANALYSIS

The Commissioner first argues that the trial court erred when it rejected the referee's factual determination that the stop was based upon suspicion raised by both the radio dispatch of the citizen's complaint and the officer's observation of the U-turn. The trial court's decision reflected its determination as a matter of law that the legal U-turn did not provide a basis to stop respondent.

In order to make a valid stop, the officer must have a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981), *quoted in State v. Combs*, 398 N.W.2d 563, 565 (Minn.1987). The stop must not be the product of "mere whim, caprice, or idle curiosity." *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975), *quoted in Marben v. State, Department of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980).

In *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552, 553 (Minn.1985), the supreme court held a stop improper when an unidentified person reported "possibly a drunken driver," and gave the car's direction of travel, description and license plate number. The court noted that nothing was known about the informant or what led him to believe the driver was "possibly" drunk. *Id.* at 556. While there was some testimony by the officer that the radio call indicated the car was being driven in an erratic manner, the court concluded it was never made clear whether the dispatcher had been told this by the anonymous caller, or whether this was an embellishment added by the dispatcher or the arresting officer. *Id.* at 556.

We hold that *Olson* is controlling, and that the officer had an insufficient basis to stop respondent. Here the officer had no information about the informant, other than his location. *Cf. City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 890 (Minn. 1988) (informant identified himself as station attendant at particular gas station). This case is distinguishable from *Shepherd*, because here there was no way in which the informant could be held accountable for knowingly providing false information. *Id.* Further, both the referee's and the trial court's findings of fact refer to a "possible drunk driver." As the trial court noted, it is not clear whether the additional facts were relayed by the anonymous tipster or were an embellishment by the dispatcher. *Olson*, 371 N.W.2d at 556. This finding of fact made by the trial court is not clearly erroneous. *Appelgate v. Commissioner of Public Safety*, 402 N.W.2d 106, 109 (Minn.1987). In addition, the trial

court correctly found that the officer's observation of the legal U-turn was not sufficient to create a particularized and objective suspicion.

## DECISION

The order of the trial court rescinding the revocation is affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. The officer testified that the dispatcher told him the informant had reported a vehicle which was "all over the road," as well as a specific description of the vehicle, its occupants, and its direction. These facts as found by the referee are not clearly erroneous. *Appelgate v. Commissioner of Public Safety,* 402 N.W.2d 106, 109 (Minn.1987). Unlike *Olson v. Commissioner of Public Safety,* 371 N.W.2d 552, 556 (Minn.1985), the dispatcher told the officer specific and articulable facts which formed the basis for a reasonable suspicion that the driver of the vehicle was under the influence.

While the informant did not identify himself, the location of his call was known. Whether it was known because he called 911 or because he gave it, the officer had a basis, as in *Marben v. State, Department of Public Safety,* 294 N.W.2d 697 (Minn. 1980), for concluding the informant had in fact seen the driver. *City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 890 (Minn. 1988). There is a presumption of reliability of a private citizen informer. *Marben,* 294 N.W.2d at 699.

Finally, respondent's legal U-turn, while insufficient in itself for a stop, showed inattentive driving consistent, in the officer's experience, with the driving of a person who is under the influence. This provided minimal corroboration for the tip. *Shepherd,* 420 N.W.2d at 890, n. 2.

I would reverse the trial court and sustain the revocation of respondent's driver's license, as the referee recommended.