**Mitchell John PLAYLE, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. CO–88–2333.

Court of Appeals of Minnesota.

May 16, 1989.

William G. Peterson, Peterson & Associates, Ltd., Brooklyn Center, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by SHORT, P.J., and RANDALL and KALITOWSKI, JJ., without oral argument.

## OPINION

KALITOWSKI, Judge.

An officer stopped respondent's vehicle on the basis of an informant's tip, and respondent's driver's license was revoked pursuant to the implied consent law. Minn. Stat. § 169.123 (1988). Respondent petitioned for judicial review and the trial court rescinded the revocation, holding that the officer did not have articulable grounds to make the stop. The Commissioner of Public Safety appeals. We reverse.

## FACTS

Close to midnight on August 4, 1988, Officer Charles Schuveiller received a call from the dispatcher reporting a drunk driver at a Burger King restaurant. The informant, an employee of Burger King, described the color and make of the vehicle. As the officer arrived at the Burger King, a second call indicated that the vehicle was leaving the drive-through window. Schuveiller saw the suspect vehicle pull away from the drive-through window, and stopped it. The officer obtained the name, address, and work and home telephone numbers of the informant after the seizure.

Respondent's driver's license was revoked pursuant to the implied consent law, and he petitioned for judicial review. After a hearing, the trial court rescinded the revocation concluding that the officer did not have articulable grounds to make an investigatory stop of respondent, because he had no information concerning the informant's basis for concluding the driver was intoxicated and the officer observed no illegal driving conduct. The Commissioner of Public Safety appeals.

## ISSUE

Did the informant's tip give the officer sufficient information to reasonably suspect that the driver of the vehicle in question was under the influence?

## ANALYSIS

An officer must have a specific and articulable suspicion of a violation before a stop of a vehicle may be justified. *Marben v.*

*State, Department of Public Safety,* 294 N.W.2d 697, 699 (Minn.1980). The factual basis for the stop need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *Id.* (citations omitted). Information from a private citizen is presumed reliable. *Id.*

■ When an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer is justified in assuming the caller is being truthful in so identifying himself. *City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 890 (Minn. 1988). In *Shepherd,* the caller identified himself as an attendant at a particular gas station. *Id.* Here, the caller was identified as an employee of a particular Burger King restaurant. As in *Shepherd,* the officer here subsequently identified the caller, which indicates the information as to the caller's identity was adequate. *Id.* n. 1. Thus, this case does not involve an anonymous caller. *Cf. Schwartz v. Commissioner of Public Safety,* 422 N.W.2d 761, 762 (Minn.Ct.App.1988).

■ The informant described the color, make and location of the vehicle, and said the driver was drunk. The trial court here ruled that the officer did not have articulable grounds to stop respondent because he had no information as to the basis for the informant's conclusion respondent was intoxicated, and he observed no illegal driving conduct. As an initial matter, we note that the trial court referred to a "possible drunk driver." The record indicates the report was of a "drunk driver." To the extent the trial court found otherwise, it was clearly erroneous. *State v. Kvam,* 336 N.W.2d 525, 529 (Minn.1983).

Stops based upon informant's tips have been found valid upon a showing that there was a basis for the informant's knowledge. In *Marben,* 294 N.W.2d at 699, the trooper could verify the trucker-informant was in close proximity to the suspect's car. In *State v. Davis,* 393 N.W.2d 179, 181 (Minn. 1986), the police officer had a basis for thinking the informant had obtained her

information in a reliable way, because she or the driver had seen the car in question drive through the red light. In *Shepherd*, 420 N.W.2d at 891, the facts suggested that the caller's information was based on personal observation, because he was a gas station attendant who said the intoxicated driver had just left the station.

In contrast, in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552, 556 (Minn.1985), nothing was known about the informant or what led him to believe the driver was possibly drunk. In *Schwartz*, 422 N.W.2d at 762, the police had no information about the informant except the location of the telephone booth from which the telephone call was made.

*Shepherd, Marben* and *Davis* are controlling. The informant here was an employee of Burger King, and there is reason to believe the informant based his conclusion on personal observations.

Respondent also argues that cases in which revocations were sustained involved either specific facts provided by the informant or observations of erratic driving by the police officer and that neither were present here. We do not find this persuasive. In *Shepherd*, the minimal corroboration was not determinative. Instead, the court focused on the fact that the informant had personally observed the alleged drunk driver.

Finally, it is in the interests of the public that citizens are encouraged to report suspected drunk drivers to authorities, so that they may be apprehended before an accident occurs. A layperson is qualified to give an opinion as to whether a person is under the influence, based upon observations of that person. *See Trail v. Village of Elk River*, 286 Minn. 380, 390–91, 175 N.W.2d 916, 922 (1970). If the tip is sufficient, officers are encouraged to investigate the suspect immediately, rather than to allow the suspect to drive so that the officer may observe the driving. Otherwise, the risk that the suspect will be involved in an accident increases, which is not in the public's interest.

## DECISION

The order of the trial court rescinding the revocation is reversed.

Reversed.

RANDALL, Judge, dissenting.

I respectfully dissent. The only issue in this case is whether the Burger King employee provided reliable and credible information which provided the police officer with a *particularized* and *objective* basis for suspecting respondent of criminal activity. *See Marben v. State, Department of Public Safety*, 294 N.W.2d 697, 699 (Minn. 1980) (unidentified trucker called to police officer on CB and identified a particular car as having "tailgated" him for several miles); *see also State v. Davis*, 393 N.W.2d 179 (Minn.1986) (passenger in car passing a police car hollered to officer that a red car immediately behind them had just run through a red light).

The case which is quoted consistently and which gave rise to the standard of "particularized and objective basis for suspecting criminal activity" is *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). There, border patrol officers stopped a pickup to investigate the possible transportation of illegal aliens. What is significant about *Cortez* is that the description of the "particularized and objective facts" which the officers had before making the investigatory stop took about three full pages in the Supreme Court Reporter to describe.

Among other things, there were footprints, including one with a distinctive and repetitive "V-shaped" design. The footprints led across an area used by alien smugglers. The tracking disclosed that the general course the footprints took was compatible with known smuggling patterns. From their general knowledge of smuggling, and the area and the distances involved to and from the border, the officers were actually able to calculate the approximate time when a vehicle containing smuggled aliens might pass. During that time span, a pickup suitable for smuggling passed their way and they stopped it. A reading of *Cortez* displays paragraphs

and paragraphs of particularized and objective facts which the United States Supreme Court found gave rise to a constitutionally permissible stop.

Since that time, Minnesota has weakened the standard of a particularized and objective basis for suspecting criminal activity to a point where just one objective fact giving rise to a suspicion seems to be enough. *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976). However, Minnesota has always retained at least the threshold of one objective fact.[1] We have had the unidentified caller noting some identifiable criminal activity (such as the lengthy tailgating in *Marben* or the running a red light in *Davis*), or we at least have had the officer who responded to the anonymous phone call noting something suspicious of his own which gave corroboration to the tip. There was at least one objective fact in *City of Minnetonka v. Shepherd*, 420 N.W.2d 887 (1988):

> The subsequent observation of the car stopping in the middle of a residential street for no *apparent* reason, while arguably not enough by itself to justify the stop, tended to provide minimal corroboration of the information given over the telephone.

*Id.* at 891, n. 2 (emphasis in original).

I disagree with the majority's analysis that the corroboration of the stop mentioned in *Shepherd* was no part of the holding. Although *Shepherd* did not address what it would do had there been no corroboration, I find it inconceivable that, under the *Cortez* standard, at least "something" indicating possible criminal activity does not have to be observed. Here the caller used only the bare conclusory term "drunk driver." The caller did not volunteer one iota of information as to why he thought the driver was drunk, or what prompted him to use the term. He did not identify any single feature of the driver's appearance or driving conduct. I agree that the amount of information needed after an examination of *Marben, Davis* and *Shepherd* is not much, but there still remains some threshold. The caller here relayed no more information than the caller in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985), where the bare conclusory term "possible drunk driver"[2] without more was held to be insufficient to support a stop when, as here, direct observation of the vehicle by the police revealed nothing. The majority finds this case stronger than *Olson* because here the caller, having identified himself as an employee at Burger King, could be found later. The caller identifying where he worked only lends credence to his statement that he worked at Burger King. It does nothing for his bare statement that he saw a drunk driver.

Irrespective of what the law enforcement authorities could have gotten from the caller because he identified his place of work, the only test is what information the officer possessed *at the time of the stop.* After the fact discovery is not allowed to bootstrap an otherwise invalid search warrant, arrest warrant, or improper stop. I

---

1. Two Minnesota Court of Appeals decisions are readily distinguishable. In *State v. Warren*, 404 N.W.2d 895 (Minn.Ct.App.1987), JoAnn Warren lived with Clifford Warren, and she had intimate knowledge of his behavior. JoAnn informed the deputy, in a face-to-face conversation in her home, that Clifford was intoxicated and she was worried about the safety of their child whom Clifford had taken. *Id.* at 496–97. In *State v. Lipinski*, 419 N.W.2d 651 (Minn.Ct. App.1988), the informant was a doctor who identified himself, stated he was employed at a treatment center for alcoholics, and further stated an intoxicated individual had just left the center. Intimate knowledge of a party or professional expertise confer a degree of objectivity on the statement, "he's drunk" which must be considered in the totality of circumstances.

2. Whether a caller says "possible drunk driver," "very drunk driver," or "drunk driver" is purely a conclusion, unless the caller comes up with some supporting statement. The distinction in *Shepherd*, 420 N.W.2d at 891, could not have been between "possible drunk driver" and "drunk driver" because people use generalized, nondescriptive modifiers interchangeably in the normal context of human speech. On an issue of constitutional significance, it would be hard to swallow the concept that the bare conclusory phrase "drunk driver" without more would automatically lead to a good stop, but the conclusory phrase "possibly a drunk driver," or "very possibly a drunk driver" could not.

agree with the trial court that the information possessed by the officer was insufficient.

The majority makes a strong policy argument as to why the employee at the Burger King is to be commended. I could not agree more. Citizens who call the authorities with their suspicions of possible criminal activity, including both traffic offenses and more serious crimes such as felonies, are the stuff of which good citizenship is made. However, good citizenship and the fourth amendment[3] are not incompatible. When the authorities receive a call from an informant or tipster, and all the caller says is, "I see a drunk driver," or "I see a robber or a burglar," the most common sense question for the authorities to ask is "How do you know?" It is not an imposition on law enforcement for the person taking the call to elicit at least a few words from the caller to establish a foundation. Here the caller's term "drunk driver" is not a particularized or objective basis. It is simply a conclusion. It may well have been a conclusion reasonably drawn from one of the many informal but still objective indicia which laymen use as a basis to state someone is drunk, e.g. erratic driving, odor of alcohol, rudeness, loudness, inappropriate behavior, improper speech, improper walk, et cetera. In this case, common sense tells us the Burger King employee probably did see something which led him to make the phone call. He simply failed to pass it on, and the authorities failed to elicit it.

Although I commend the diligence of the caller, I agree with the trial court that a bare conclusory term, not supported by one jot of information as to why the conclusion was reached, and not supported by one jot of observed suspicious activity by the police when they arrived, cannot provide the *Cortez* objective basis required for an investigatory stop.

---

3. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.