*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1935**

State of Minnesota,
Respondent,

vs.

Cynthia Jayne Holmes-Buscher,
Appellant.

**Filed July 21, 2014
Affirmed
Hudson, Judge**

Hennepin County District Court
File No. 27-CR-09-8882

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Corrine Heine, Minnetonka City Attorney, Rolf A. Sponheim, Assistant City Attorney, Minnetonka, Minnesota (for respondent)

John L. Lucas, Minneapolis, Minnesota (for appellant)

Considered and decided by Hudson, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges the district court's denial of her motion to suppress evidence relating to her convictions of second-degree driving-while-impaired (DWI) and possession of an open bottle, arguing that police lacked reasonable suspicion to stop her

vehicle based on the uncorroborated tip of an unidentified informant. Because, under the totality of the circumstances, police had reasonable suspicion to conduct the stop, we affirm.

**FACTS**

The state charged appellant Cynthia Jayne Holmes-Buscher with two counts of gross-misdemeanor second-degree driving-while-impaired (DWI) and an open-bottle violation after police stopped her vehicle following a report from a 911 caller that appellant had been driving erratically during rush hour in Minnetonka. The defense moved to suppress evidence, arguing that police lacked reasonable articulable suspicion to conduct the stop because it was based on an uncorroborated report from an unidentified caller.

At an evidentiary hearing, a Minnetonka police officer testified that he received information from dispatch that a person following a driver reported that the driver was behaving erratically, stopping in the middle of the road and weaving from side-to-side. Dispatch referred to the vehicle as a dark-colored Hummer, which the officer described as a "large four-wheel drive truck" that was "fairly uncommon." The caller stated that the driver was "driving really weird," driving over the center line and then towards the ditch, and that she had also exited the vehicle in the middle of the road with a line of cars behind her. The caller identified the license plate of the vehicle and gave a physical description of the driver.

According to the tape of the 911 call, when the dispatcher asked for the caller's name, she stated, "I would like to remain anonymous if I can." When told that the police

2

would then have to locate the vehicle, she asked, "Will she know that it was me that called?" The dispatcher told the caller that if she did not want to get involved, there was no sense in continuing to follow the driver or give her name, and that if she still followed it, investigating police would stop her own vehicle. The caller replied, "Oh that's fine," identified her own vehicle by make and model and continued to follow the Hummer until police stopped it.

The arresting officer testified that after receiving the report from dispatch, he located the dark-colored Hummer and stopped it two to three miles from its first reported location. He testified that he did not personally observe illegal driving behavior, but that he believed the Hummer was heading toward the freeway, where it could be more dangerous at high speeds. The officer asked appellant, the driver, why she had stopped in the middle of the road, and she replied that turkeys were crossing the road. After observing that appellant showed signs of intoxication and attempting to administer a preliminary breath test (PBT), which appellant declined to finish, the officer arrested her for DWI.

The officer testified that about ten minutes later, while he was interviewing appellant, he directed another responding officer to interview the caller, who had parked about 100 yards behind the Hummer. The second officer testified that he spoke to the caller, who declined to give any personal information and stated that she "didn't want to be involved." He later obtained the driver's license photo of K.G., the person who later picked up appellant's dogs and children at the police station, and he testified that it appeared to be the same person he interviewed. Through phone and driver and vehicle-

3

services records, police identified the person who had made the driving complaint as a person with the same first and middle names as K.G., but a different last name. An investigator testified that this change was consistent with a person marrying and changing names.

The district court denied the motion to suppress evidence, finding that the 911 caller provided sufficient information to the dispatcher to render her identifiable because she called 911 using an unblocked telephone number, continued to provide the dispatcher with the location of her vehicle and the Hummer, described her own vehicle with specificity, and agreed to pull her vehicle over so that police could speak with her. Therefore, the district court concluded that, based on appellant's driving conduct as observed by an identifiable 911 caller, police acted reasonably in conducting the stop. After considering the matter on stipulated facts, the district court found appellant guilty of all counts. This appeal follows.

## D E C I S I O N

"When reviewing pretrial orders on motions to suppress evidence, [appellate courts] may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but review its legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

Both the United States and Minnesota Constitutions guarantee a person's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const.

art. I, § 10. With a few exceptions, warrantless searches are unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). Officers conducting a warrantless investigatory seizure "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968). "Evidence obtained as a result of a seizure without reasonable suspicion must be suppressed." *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). We review de novo the legal issue of whether reasonable articulable suspicion exists. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010).

Appellant argues that the police lacked reasonable suspicion to stop her vehicle based solely on the uncorroborated report of an anonymous tipster. "[T]he factual basis for stopping a vehicle need not arise from [an] officer's personal observation." *Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). An informant's tip may be adequate to support an investigative seizure if the tip has sufficient indicia of reliability. *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). When examining the sufficiency of a tip to provide reasonable articulable suspicion for a stop, courts examine two factors: identification of the informant and facts supporting the informant's basis of knowledge. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002). Neither factor is independently dispositive, and the overall determination of reasonable suspicion is based on the totality of the circumstances. *Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn. App. 2000) (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990)). "[U]ltimate

5

reliability depends not only on the identification of the informant but also on the nature of the information he or she gives." *Yoraway v. Comm'r of Pub. Safety*, 669 N.W.2d 622, 626 (Minn. App. 2003).

We agree with the district court that, based on the circumstances surrounding the stop, the caller was identifiable. "When an informant provides sufficient information so that he may be located and held accountable for providing false information, the officer is justified in assuming the caller is being truthful in so identifying himself." *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748 (Minn. App. 1989). Here, although the caller did not give her name and stated that she did not wish to be involved, she continued to follow the Hummer even after dispatch told her that her own vehicle would be stopped as well. And she provided sufficient additional information, such as the make and model of her own vehicle, so that police could later locate her. *See id.* (concluding that when an unnamed employee of a particular restaurant provided a tip, and police subsequently identified the employee, information as to the caller's identity was adequate, and the case did not involve an anonymous caller); *see also Minnetonka v. Shepherd*, 420 N.W.2d 887, 890 (Minn. 1988) (concluding that when a person identified himself as an unnamed employee of a certain gas station, he had placed himself in a position from which he might be located and held accountable for providing false information, so that his report of an intoxicated driver had indicia of reliability).

Further, additional specific facts supported the caller's basis of knowledge. She identified appellant's vehicle as a dark-colored Hummer, an uncommon vehicle, with a certain license plate number. And her use of the 911 call system, while not dispositive,

6

also lends reliability to her tip. *See Navarette v. California*, 134 S. Ct. 1683, 1690 (2014) (holding that an informant's "use of the 911 system is . . . one of the relevant circumstances that, taken together, [may] justif[y] . . . reliance on the information reported in [a] 911 call"). The caller's tip was corroborated when the officer located the Hummer within a few minutes of the 911 call and observed it turn at a certain intersection, as dispatch was simultaneously describing that turn to him. Based on the totality of the circumstances, the officer had reasonable articulable suspicion to stop appellant's vehicle, and the district court did not err by declining to suppress the evidence.

**Affirmed.**