*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1644**

State of Minnesota,
Respondent,

vs.

Ronaldo Earl Rounds,
Appellant.

**Filed August 25, 2014
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-11-20573

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

John L. Lucas, Minneapolis, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Johnson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

The state convicted appellant Ronaldo Rounds of two second-degree controlled-substance crimes based on the seizure of drugs from his car. Rounds challenges the district court's denial of his motion to suppress the evidence found after a citizen

informant's tip led police to search his vehicle. Because probable cause existed to search his vehicle, we affirm.

## FACTS

In the evening hours of October 1, 2010, Minneapolis police officers Scott Aikins and Jesse Lopez were patrolling a small beat in the Lake Street and Lyndale Avenue area of Minneapolis. That same day, the officers received a citizen complaint, stating that a car in a parking lot was being used to sell narcotics. The citizen caller, who provided his contact information, gave a description of the car and a description of the car's driver. After receiving the call, Officer Aikins drove a marked squad car to the specified location and identified the car described in the 911 call. Officer Aikins parked the squad car, and both officers approached the car on foot. Rounds was sitting in the driver's seat.

Officer Aikins asked Rounds for his identification and asked a few general questions to investigate the call. Officer Aikins testified that he was looking for signs of narcotics due to the nature of the call. While Rounds was retrieving his driver's license and insurance card, Officer Aikins saw that the interior console area looked broken and dismantled. This observation made Officer Aikins suspicious because he had been on multiple calls where narcotics were hidden in car compartments or "tucked up" in a broken area of a dashboard. Officer Aikins also noticed that, when Rounds pulled out his license, "he had an overly large full billfold full of paper money." Officer Aikins took Rounds's identification and went back to the squad car to run routine checks.

After returning to the squad car, Officer Aikins contacted the 911 caller for more information. From this call, Officer Aikins learned that this was the second time that day

that the caller called 911 to report suspicious activity. The caller further reported that individuals would approach Rounds's car, there would be a short conversation at the window, some sort of exchange would occur at the window between hands, and the individuals would walk away, with their hands closed, like "they were holding something."

Officer Aikins then returned to Rounds's car and had him exit and sit in the back seat of the squad car. Initially, Officer Aikins intended to detain, and possibly arrest, Rounds for loitering with the purpose of selling narcotics. But at the time, the officers did not tell Rounds that he was under arrest. The officers then returned to Rounds's car to see if they could observe anything from outside the car. While approaching, Officer Aikins noticed an empty, thin cellophane wrapper that he referred to as a "crack wrapper" near the car. Officer Aikins testified that he had seen many of these types of wrappers used to package narcotics and thought the wrapper had not been there long because it was extremely light and "[a]ny kind of wind or anything" could blow it away.

After finding the wrapper, Officer Aikins requested a canine unit to sniff around the car to determine if narcotics were inside the car. Approximately 15 minutes later, a canine unit arrived. After informing the canine officer of what the officers had observed, the canine officer walked the dog around the vehicle. The dog stopped at the driver's door and attempted to climb into the window. The canine officer opened the door and allowed the dog inside the vehicle to prevent the dog from jumping through the window and damaging the car. The dog indicated that drugs were in the center console area. Officer Aikins opened the console and found Rounds's prescription medication and a

3

package of cigarettes with small white pieces wrapped in plastic inside. Chemical testing confirmed that the suspected narcotics were crack and powder cocaine.

Rounds moved to suppress the evidence seized from his vehicle, arguing that the officers did not have reasonable suspicion to detain him and lacked probable cause to search his vehicle. The district court denied Rounds's motion to suppress, stating that "by contacting the [informant] and having a far more detailed conversation about exactly what had been observed, gave the officer a sufficient basis to proceed as he did."

Rounds waived his right to a jury trial and agreed to a stipulated-facts trial pursuant to the procedure in Minn. R. Crim. P. 26.01, subd. 4, previously referred to as a *Lothenbach* proceeding. *See State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980). The district court found Rounds guilty of two second-degree controlled-substance counts and sentenced him to imprisonment.

Rounds appeals.

## DECISION

On appeal, Rounds challenges the district court's denial of his suppression motion. When reviewing a district court's decision on a motion to suppress evidence, we independently review the facts and determine whether, as a matter of law, the district court erred by not suppressing the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). The validity of a search or seizure is a question of law, which is reviewed de novo. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011).

Both the United States and Minnesota Constitutions guarantee a person's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const.

art. I, § 10. With a few exceptions, warrantless searches are unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). "Evidence obtained as a result of a seizure without reasonable suspicion must be suppressed." *Diede*, 795 N.W.2d at 842. A law enforcement officer may, however, "consistent with the Fourth Amendment, conduct a brief, investigatory stop" of a motor vehicle if "the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). We review de novo the legal issue of whether reasonable, articulable suspicion exists. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010).

An officer must be able to articulate a particularized and objective basis for suspecting the person of criminal activity before the seizure. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). The reasonable-suspicion standard is not high, demands less than the standard for probable cause or a preponderance of the evidence, but requires more than a hunch. *Diede*, 795 N.W.2d at 843. "[W]e consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). The totality of the circumstances include "the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

Rounds first argues that the initial stop was not supported by reasonable suspicion because the citizen informant did not articulate a reliable basis of knowledge and the police did not corroborate the information. The state counters that the informant's report to officers was reliable and established reasonable, articulable suspicion for the investigatory stop.

The factual basis necessary to support an investigatory stop may arise from the personal observations of the police officer or from information provided by another person. *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005). An informant's tip may be adequate to support an investigative stop if the tip has sufficient indicia of reliability. *In re Welfare of G. M.*, 560 N.W.2d 687, 691 (Minn. 1997). When examining the sufficiency of an informant's tip to provide reasonable, articulable suspicion for a stop, we examine two factors: (1) identification of the informant and (2) facts supporting the informant's basis of knowledge. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 12, 2002). Neither factor is dispositive, and the overall determination of reasonable suspicion is based on the totality of the circumstances. *Id.* Here, the officers received a tip from a private citizen who was working at a business bordering the parking lot.

Tips from private citizens are presumed reliable, especially when informants "give information about their identity so that the police can locate them if necessary." *State v. Davis*, 732 N.W.2d 173, 183 (Minn. 2007). In addition, the Supreme Court recently concluded that an informant's "use of the 911 system is . . . one of the relevant circumstances that, taken together, [may] justif[y] the officer's reliance on the

6

information reported in the 911 call." *Navarette v. California*, 134 S. Ct. 1683, 1690 (2014). The district court found that the citizen informant made "detailed first-person observations of a car, a license plate, a color, a description, ongoing activity, and activity that was consistent with narcotics dealing."

We agree with the district court that the citizen informant's tip was sufficiently reliable. The citizen informant used the 911 system to call in and report suspected narcotics dealing. The citizen informant left a call-back number, which the officers later called to gather additional information about the suspected narcotics dealing. The officers knew the location of the citizen informant at a business approximately 35 feet from Rounds's car. Additionally, the citizen informant told the officers that although he never saw actual drugs, he did make personal observations: "[H]e saw people making exchanges in the door, in the window, and then walking away with their hands clenched, as if they were holding something small enough to fit in the palm of their hand."

Because the citizen informant provided identifying information and details about Rounds that the police officers' observations corroborated, the officers had reasonable, articulable suspicion of criminal activity to support expanding their investigatory stop. *See, e.g.*, *Minnetonka v. Shepherd*, 420 N.W.2d 887, 891 (Minn. 1988) (concluding that when a person, who identified himself as an employee of a certain gas station, reported an intoxicated driver had just left the station, and a few minutes later, an officer observed a vehicle stopped in the middle of the road, the officer had sufficient information to justify a stop); *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748 (Minn. App. 1989) (concluding that reasonable suspicion existed for a stop when an informant, who

7

identified himself as an employee of a certain restaurant, observed a car leave the drive-through window and reported a "drunk driver").

Lastly, Rounds's reliance on *Florida v. J.L.*, 529 U.S. 266, 120 S. Ct. 1375 (2000), to support his claim that the informant's call lacked sufficient indicia of reliability is not availing. In *J.L.*, an anonymous caller reported to the police that a young black male wearing a plaid shirt at a bus stop was carrying a gun. *Id.* at 268, 120 S. Ct. at 1377. The record in *J.L.* contained no additional information about the informant or how long it took police to respond to the tip. *Id.* The Supreme Court held that the tip lacked sufficient indicia of reliability because the police only had the "bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271, 120 S. Ct. at 1379.

Based on the totality of the circumstances, the information provided by the citizen informant was sufficiently reliable and thus provided the reasonable, articulable suspicion necessary to justify the officers' investigative stop of Rounds.

Rounds next argues that the officers unlawfully seized him. The district court concluded that the "police [had] reasonable suspicion to take Mr. Rounds into custody for purposes of an investigatory, continuing investigation." A proper investigatory stop generally must be limited in scope and duration to the original purpose of the stop. *Diede*, 795 N.W.2d at 845. This requires the investigatory stop to "be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). Otherwise, the duration of an investigatory stop may be

8

extended only if doing so would be "reasonably related to the investigation of an offense lawfully discovered or suspected during the stop." *State v. Askerooth*, 681 N.W.2d 353, 370 (Minn. 2004); *Diede*, 795 N.W.2d at 845 (allowing expansion for "the investigation of only those additional offenses for which the officer develops a reasonable, articulable suspicion within the time necessary to resolve the originally-suspected offense"). Here Rounds sat in the back of the squad car for approximately 15 minutes.

We measure the "reasonableness" of an expansion objectively by considering the totality of the circumstances. *Askerooth*, 681 N.W.2d at 364. The question is whether "the facts available to the officer at the moment of the seizure [would] warrant a [person] of reasonable caution in the belief that the action taken was appropriate." *Id.*

Rounds's detention in the squad car was a proper expansion of the investigatory stop. A citizen complaint concerning suspected drug activity prompted the police to stop Rounds. This tip was later corroborated by the officers. In addition to the tip, while asking Rounds general questions, Officer Aikins observed a large amount of cash on Rounds and a dismantled dashboard in Rounds's car. Shortly thereafter, Officer Aikins found the cellophane wrapper that, in his experience, was consistent with narcotics dealing. The officers detained Rounds in the squad car for approximately 15 minutes until the canine unit arrived. *See State v. Moffatt*, 450 N.W.2d 116, 119 (Minn. 1990) (finding a one-hour detainment in squad car not too long when officers acted reasonably and diligently); *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985) (stating there is no bright-line rule regarding an appropriate length of an investigation detention).

9

Rounds contends, under *Askerooth*, that it was improper to confine Rounds to the squad car.  In *Askerooth*, the supreme court held that the lack of a driver's license is not a reasonable basis for confining a suspect in the back of a squad car when the suspect was pulled over for a minor traffic violation.  681 N.W.2d at 365.  But here, the officers were not investigating Rounds for a minor traffic violation; rather, the officers were investigating him for suspected narcotics dealing.  Thus, *Askerooth* does not apply to the facts of this case.  Viewed in the totality of the circumstances, Rounds's confinement in the squad car was a permissible expansion of the scope of the initial stop and justified by the original purpose of the stop.[1]

Lastly, Rounds claims that the search of his car was illegal as it was conducted without a warrant or valid exception to the warrant requirement.  An exception to the warrant requirement is the automobile exception.  Under this exception, police may search a motor vehicle without a warrant "[w]hen probable cause exists to believe that a vehicle contains contraband."  *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).  Probable cause exists when, looking at the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983).

---

[1] We commend the officers in this case for their patient investigative work.  The officers expanded the scope of the search in calculated, incremental steps, and each expansion was justified by reasonable, articulable suspicion.  *See Askerooth*, 681 N.W.2d at 364 ("[E]ach incremental intrusion during a stop must be strictly tied to and justified by the circumstances which rendered [the initiation of the stop] permissible." (alteration in original)).

The firsthand observations by a reliable citizen informant that were later corroborated by the officers are relevant and provide a basis in the probable cause analysis. Next, the officers' personal knowledge that there was a problem with narcotics dealing in the same parking lot provides further probable cause. *See State v. Charley*, 278 N.W.2d 517, 519 (Minn. 1979) (recognizing that officer's knowledge of drug problems in a parking lot was a valid totality-of-the-circumstances factor). Rounds's dismantled dashboard and the large amount of cash in Rounds's wallet all further support a finding of probable cause. Lastly, these facts combined with Officer Aikins's discovery of the "crack wrapper" next to Rounds's car provided the officers with probable cause that a search of Rounds's car would reveal contraband. *See Flowers*, 734 N.W.2d at 251-52 (stating that because of their special training, "police officers articulating a reasonable suspicion may make inferences and deductions that might well elude an untrained person").

We conclude that the corroborated observations of the citizen informant, together with the officers' independent observations, gave the officers probable cause to believe that Rounds's vehicle contained narcotics. Accordingly, the search of Rounds's vehicle was valid. Because probable cause to search Rounds's vehicle existed independent of the canine search, we decline to address the arguments raised regarding the subsequent canine sniff.

**Affirmed.**

11