*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0816**

State of Minnesota,
Respondent,

vs.

Christopher Gary Zurek,
Appellant.

**Filed February 1, 2016
Affirmed
Peterson, Judge**

Sherburne County District Court
File No. 71-CR-14-461

Lori Swanson, Attorney General, General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, David T. Anderson, Assistant County Attorney, Elk River, Minnesota (for respondent)

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Peterson, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**PETERSON,** Judge

In this appeal from a conviction of refusal to submit to a chemical test, appellant argues that (1) the stop of his vehicle was not supported by a reasonable suspicion of

criminal activity; and (2) there was not a reasonable suspicion that appellant was operating a motor vehicle in violation of the driving-while-impaired statute to justify requiring him to submit to a preliminary breath test. We affirm.

**FACTS**

During the evening on April 3, 2014, Sherburne County Dispatch received a call from an identified tow-truck driver who worked for Collins Brothers. The tow-truck driver said that he was assisting the driver of a silver pickup truck that had gone into the ditch on Highway 169 near 283rd Street during a snowstorm, and he believed that the driver of the pickup truck was intoxicated.

Sherburne County Dispatch relayed the tow-truck driver's statements to law enforcement. Soon after, a sheriff's deputy arrived at the scene and saw a silver pickup truck parked on the shoulder of the road and a tow truck parked directly in front of the pickup. The deputy parked his squad car approximately 20 feet behind the pickup and turned on his overhead lights. When the deputy got out of his squad car and approached the pickup truck, the driver began driving the truck away from the left shoulder of the road. In response, the deputy "banged" on the side of the pickup to make the driver stop.

After the driver stopped the pickup, the deputy approached the driver's side window and identified the driver as appellant Christopher Zurek. As he spoke with appellant, the deputy observed that appellant "exhibited slowed reactions, smelled of alcohol, avoided eye contact, and had bloodshot, watery eyes."

A state trooper arrived on the scene about two or three minutes after the deputy. The trooper independently observed that appellant smelled of alcohol, talked softly and

2

slowly, avoided eye contact, and had bloodshot, watery eyes. The trooper administered the Horizontal Gaze Nystagmus (HGN) test while appellant was seated in the pickup, and appellant exhibited six possible signs of impairment. The weather prevented the trooper from administering additional field sobriety tests, but appellant submitted to a preliminary breath test (PBT) that showed an alcohol concentration of .341. Appellant was arrested and transported to the police station where he refused to submit to a chemical test.

Appellant was charged with refusal to submit to a chemical test in violation of Minn. Stat. § 169A.20, subd. 2 (2012). Appellant filed a motion to suppress all evidence on the basis that (a) there was not a reasonable suspicion of criminal activity to support the stop of his vehicle; and (b) there was not a reasonable suspicion that he was operating a motor vehicle in violation of the driving-while-impaired statute to support a request that he submit to a preliminary breath test. The district court denied appellant's motion. The parties stipulated to the prosecution's evidence in a trial to the court under Minn. R. Crim. P. 26.01, subd. 4, and the district court found appellant guilty of the charged offense. This appeal followed.

## D E C I S I O N

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999) (citing *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992)). We review the district court's findings of fact for clear error and determine de novo whether a search

3

or seizure was justified by reasonable suspicion or probable cause. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

## I.

Appellant challenges the district court's conclusion that the stop of his vehicle was supported by a reasonable suspicion of criminal activity. "The factual basis required to support a stop is minimal." *State v. Haataja*, 611 N.W.2d 353, 354 (Minn. App. 2000) (quotation omitted), *review denied* (Minn. July 25, 2000). "In general, the state and federal constitutions allow an officer to conduct a limited investigatory stop of a motorist if the state can show that the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quotation omitted). This court considers the totality of the circumstances to determine if reasonable suspicion exists. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007).

"The information necessary to support an investigative stop need not be based on the officer's personal observations, rather, the police can base an investigative stop on an informant's tip if it has sufficient indicia of reliability." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). "The Minnesota cases dealing with traffic stops based on informant tips have focused mainly on two factors: (1) identifying information given by the informant, and (2) the facts that support the informant's assertion that a driver is under the influence." *Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn. App. 2000). Neither factor is determinative, and the overall determination of reasonable suspicion is based on the totality of the circumstances. *Id.*

Appellant argues that for a stop based solely on an informant's tip to be valid, the informant must provide specific information as to why the informant believed that the driver was intoxicated. Minnesota caselaw, however, does not require that an *identified* informant state why the informant believes that a driver is intoxicated. The supreme court has held that when a stop is based on a tip alone, an "*anonymous* caller must provide at least some specific and articulable facts to support the bare allegation of criminal activity." *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 556 (Minn. 1985) (emphasis added).

As long as the informant can be identified, and the record supports an inference that the informant's tip was based on personal observation, courts have upheld investigatory stops based on general tips of drunk driving. *See*, *e.g.*, *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 891 (Minn. 1988) (stating that a gas station attendant's tip that a driver was intoxicated was sufficient to justify investigatory stop); *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560-61 (Minn. App. 2005) (stating that identified citizen's tip that a driver was drunk was sufficient to establish reasonable suspicion because it was based on the informant's personal observation); *State v. Pealer*, 488 N.W.2d 3, 5 (Minn. App. 1992) (concluding that police had reasonable suspicion for investigatory stop based on known, confidential informant's tip that a driver was intoxicated).

What has been required to find that a stop based upon an identified informant's tip was valid is "a showing that there was a basis for the informant's knowledge." *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748-49 (Minn. App. 1989). The informant in *Playle* did not state why he believed that the driver was drunk, but this court upheld the stop because the informant provided sufficient information so that he could be located and

5

held accountable for providing false information and the police had "reason to believe the informant based his conclusion on personal observations." *Id.* at 748-49.

In this case, the informant called dispatch, identified himself, and provided his location. The informant also told dispatch that he was assisting a driver who had driven into a ditch and he believed that the driver was intoxicated. Although the informant did not specifically state why he believed that the driver was intoxicated, the informant's statements demonstrated that he was in direct contact with the driver and that his statements were based on his personal observations of appellant. *See id.* at 749 (stating that police had reason to believe the informant based on his personal observations). Furthermore, when the deputy arrived at the reported location, he saw a silver pickup truck and a tow truck, which corroborated much of the information that the informant gave to the dispatcher.[1] The stop of appellant's vehicle was justified by a reasonable suspicion of impaired driving.

**II.**

> When a peace officer has reason to believe from the manner in which a person is driving, operating, controlling, or acting upon departure from a motor vehicle, or has driven, operated, or controlled a motor vehicle, that the driver may be violating or has violated section 169A.20 (driving while impaired), . . . the officer may require the driver to provide a sample of the driver's breath for a preliminary screening test

---

[1] The fact that the informant stated that he "believed" that appellant was drunk, rather than stating that he was "definitely drunk" is inconsequential. *See State v. Hjelmstad*, 535 N.W.2d 663, 666 (Minn. App. 1995) (concluding that the difference between the informant's equivocal statement that the driver was "possibly drunk" versus a more definite statement of "drunk" was a distinction of "little significance").

using a device approved by the commissioner [of public safety] for this purpose.

Minn. Stat. § 169A.41 (2012).

To require the test, an officer must have a specific and articulable suspicion of a violation of section 169A.20. *Knapp v. Comm'r of Pub. Safety*, 594 N.W.2d 239, 241. (Minn. App. 1999), *rev'd on other grounds,* 610 N.W.2d 625 (Minn. 2000). "Articulable suspicion includes evidence of sufficient indicia of intoxication." *Id.* Articulable suspicion is an objective standard and is determined from the totality of the circumstances. *Paulson v. Comm'r of Pub. Safety*, 384 N.W.2d 244, 246 (Minn. App. 1986).

Appellant argues that there was no reasonable suspicion that he was operating a motor vehicle while impaired that would permit an officer to require that he submit to a PBT. Appellant contends that because the deputy's statements and his testimony were inconsistent, the deputy's testimony that he "immediately smelled alcohol" was not credible and anything else that he testified to has to be questioned. "The credibility of witnesses is for the trial court in a court trial." *Reis v. Comm'r of Pub. Safety*, 358 N.W.2d 740, 741 (Minn. App. 1984). We defer to the district court's credibility determinations.

This court has held that the odor of alcohol, when combined with bloodshot and watery eyes, established a reasonable articulable suspicion to administer a preliminary screening test. *Hagar v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 911 (Minn. App. 1986); *see also LaBeau v. Comm'r of Pub. Safety*, 412 N.W.2d 777, 779-80 (Minn. App. 1987) (holding that a driver's red and bloodshot eyes, odor of alcohol, and slurred speech provided police with reasonable, articulable suspicion to ask the driver to take a breath

7

test).  And this court has held that a traffic violation or a serious accident coupled with an objective indication of impairment established a reasonable, articulable suspicion justifying a PBT.  *See State v. Vievering*, 383 N.W.2d 729, 730 (Minn. App. 1986), *review denied* (Minn. May 16, 1986); *see also Heuton v. Comm'r of Pub. Safety*, 541 N.W.2d 361, 363 (Minn. App. 1995) (concluding that smell of alcohol on breath and involvement in serious accident established reasonable suspicion that driver was under influence).

The record indicates that the odor of alcohol emanating from appellant was faint at best.  But both officers testified that they observed other indicia of intoxication.  The deputy testified that appellant exhibited slowed reactions, avoided eye contact, and had bloodshot and watery eyes.  The trooper testified that appellant talked softly and slowly, avoided eye contact, and had bloodshot, watery eyes.  Also, both officers were aware of the informant's belief that appellant was intoxicated.  Finally, although the record indicates that the road conditions were poor due to the snow, appellant drove his truck into the ditch, which provided law enforcement with a further reasonable basis to conduct a PBT.  S*ee Heuton*, 541 N.W.2d at 363.  Accordingly, based on the totality of the circumstances, the officer had a reasonable, articulable suspicion that appellant was driving while impaired that permitted him to require appellant to submit to a PBT.

Appellant also argues that the trooper did not conduct any valid field sobriety tests.  Appellant contends that the HGN test, which was the only test conducted, was not conducted in accordance with the National Highway Traffic Safety Administration protocol; the standard method is to conduct the test while a person is standing, and appellant was sitting in his truck when he took the test.  Because we have concluded that evidence

other than the results of the HGN test established that the trooper had a reasonable, articulable suspicion that appellant was driving while impaired, we need not determine whether the HGN test also indicated that appellant was driving while impaired.

**Affirmed**.