Mark A. CATLIN, Petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C3-92-726.

Court of Appeals of Minnesota.

Oct. 13, 1992.

Samuel A. McCloud, Barry L. Hogen, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Ronald S. Latz, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Mark A. Catlin was arrested for DWI, and his driver's license was revoked pursuant to the implied consent law. He petitioned for judicial review, and the trial court sustained the revocation. We affirm.

## FACTS

Deputy Sheriff Daniel Harjes arrested Catlin for DWI on December 18, 1991, and read him the implied consent advisory. Catlin consulted with an attorney and then agreed to take a breath test. The test revealed an alcohol concentration of .12. Catlin's driver's license was revoked for 90 days pursuant to the implied consent law, and he petitioned for judicial review.

Catlin did not testify at the hearing. He offered a certified copy of his driving record dated January 6, 1992, which did not show an implied consent revocation within five years of the current incident. A certified copy of his driving record dated De-

cember 17, 1990 showed an implied consent revocation dated November 30, 1990. Catlin's counsel explained that the November 30, 1990 revocation was not on the January 6, 1992 driving record because the revocation had since been rescinded.

Catlin argued that the advisory was misleading and violated his due process rights because, although his license had been revoked, he was not subject to the crime to refuse law because the revocation had been rescinded. The trial court found Catlin knew the prior revocation had been rescinded. It noted he consulted with and obtained legal advice from an attorney before submitting to testing, and further concluded that he should have known or have reasonably believed that a rescinded driver's license revocation was not equivalent to a driver's license revocation. It determined that his due process rights were not violated and it ordered the license revocation sustained. Catlin appeals.

## ISSUES

1. Was the trial court finding that Catlin knew his driver's license had been previously revoked and that the revocation was subsequently rescinded clearly erroneous?

2. Did the implied consent advisory, Minn.Stat. § 169.123, subd. 2(b)(5) (Supp. 1991), which warned Catlin that he may be subject to criminal prosecution if he refused testing and his right to drive had previously been revoked within the requisite time period, violate his due process rights where, although he had a prior license revocation, he was not subject to criminal penalties because it had been rescinded?

## ANALYSIS

■ 1. Catlin claims the trial court finding that he knew his license had been previously revoked and was subsequently rescinded was clearly erroneous. Findings of fact will not be reversed unless clearly erroneous. *State, Dep't of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971). Catlin contends there is nothing in the record to support this finding.

Catlin introduced into evidence a certified copy of his driving record as it appeared shortly after the DWI arrest giving rise to this case, which was devoid of any reference to a prior license revocation. He also introduced into evidence an earlier version of the record, which showed the prior revocation. Catlin's attorney explained that the later version did not show a. revocation because it had been rescinded. We note that at the time of his DWI arrest, Catlin produced his driver's license. Based upon this evidence, the trial court determination was not clearly erroneous.

■ 2. Catlin argues that his due process rights were violated because the advisory was misleading. The challenged portion of the advisory reads as follows:

If you refuse testing and your right to drive has been revoked once within the past five years or two or more times within the past ten years for an alcohol or controlled substance related driving offense, you may be subject to criminal prosecution because you refused testing.

*See* Minn.Stat. § 169.123, subd. 2(b)(5) (Supp.1991). Catlin contends this threatened him with a criminal charge which the state was not authorized to impose, because although his license had been revoked earlier, he was not subject to the law making it a crime to refuse testing because the revocation was later rescinded. *See* Minn.Stat. § 169.121, subd. 1a (1990).

Catlin relies upon *McDonnell v. Commissioner of Pub. Safety*, 473 N.W.2d 848, 855 (Minn.1991). There, the supreme court held the implied consent advisory as it was then formulated violated the due process rights of first time offenders, because it threatened criminal charges for refusing testing which the state was not authorized to impose on first time offenders. The unconstitutional portion of the advisory there provided in relevant part:

If testing is refused, your right to drive will be revoked for a minimum period of one year, and you may be subject to criminal penalties.

*McDonnell*, 473 N.W.2d at 850 n. 2. The court considered it important to determine

whether suspects were "actively misled" by police regarding their statutory obligation to undergo testing. *Id.* at 854.

The advisory language here, rather than actively misleading the driver, is an accurate summary of the statutory language in Minn.Stat. § 169.121, subd. 1a. The flaw which Catlin implicitly raises is that the advisory does not address his specific situation, in which his license was first revoked and the revocation was later rescinded.

A rescission "seeks to put the parties into the position they were in before the event which is rescinded." *Barlow v. Commissioner of Pub. Safety,* 365 N.W.2d 232, 233 (Minn.1985). It ordinarily relieves the parties of the consequences of the event rescinded. *Id.* Catlin was thus not subject to criminal penalties for refusal if the revocation was rescinded.

Catlin knew his revocation had been rescinded, and had the opportunity to discuss legal questions with his attorney prior to making the testing decision. The supreme court specifically required that drivers be allowed to consult with counsel prior to making the decision regarding testing, in order to discuss the legal ramifications of the decision. *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 833 (Minn. 1991). The failure of the advisory to warn of every possible consequence does not violate fundamental fairness inherent in due process. *McDonnell,* 473 N.W.2d at 853; *see State v. Abe,* 289 N.W.2d 158, 160 (Minn.1980). Likewise, due process does not require that the advisory explain every potentially unclear application of the law. The driver's due process rights were not violated by the implied consent advisory which was read to him.

## DECISION

The order of the trial court sustaining the revocation is affirmed.

Affirmed.