Jeffrey William MAGNUSON,
petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. A04–2212.

Court of Appeals of Minnesota.

Sept. 13, 2005.

Peter J. Timmons, Minneapolis, MN, for respondent.

Mike Hatch, Attorney General, Jeffrey F. Lebowski, Joel A. Watne, Sean McCarthy, Assistant Attorneys General, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## O P I N I O N

WILLIS, Judge.

In this appeal from the rescission of respondent's license revocation, appellant commissioner of public safety argues that the court erred by concluding that (1) an investigatory stop based on an identified informant's tip to the police was invalid and (2) the implied-consent advisory violated respondent's due-process rights because it did not warn that a test result of .20 or more is an aggravating factor that might increase the penalty for driving while impaired. Because we find that the stop was lawful and that the implied-consent advisory did not violate respondent's due-process rights, we reverse.

## FACTS

On April 17, 2004, D.G. (the informant) and her husband sat next to respondent Jeffrey Magnuson and his brother at the Veterans of Foreign Wars Hall (VFW) in Mound. The informant observed Magnuson and his brother drinking and being "very loud and boisterous." When the informant saw Magnuson and his brother get into separate vehicles and drive away from the VFW, she called 911.

The informant reported to the 911 dispatcher that she was "at the VFW in Mound on Commerce Boulevard, and there's two gentlemen getting into two different vehicles and they are definitely drunk." She gave the dispatcher her name and phone number, described the vehicles, and reported the license-plate number of one of the vehicles. The dispatcher relayed over the radio the information provided by the informant. Officer Mike Sussman was nearby, and he observed both Magnuson and his brother turn into a parking lot near another bar. Officer Sussman then activated his lights and requested assistance. Officer Corey Wiebusch responded.

Magnuson failed a field sobriety test and was taken to the police station. There, Officer Wiebusch read Magnuson an implied-consent advisory, and Magnuson consented to a breath test. Magnuson's breath-test results showed an alcohol concentration of .21. Magnuson was charged with third-degree driving while impaired, and his driver's license was revoked.

Magnuson petitioned for judicial review of his license revocation. After a hearing, the district court rescinded Magnuson's license revocation, concluding that the informant's tip did not provide a sufficient basis for conducting an investigatory stop and that the implied-consent advisory violated Magnuson's due-process rights. The commissioner of public safety appeals the rescission of Magnuson's license revocation.

## ISSUES

1. Did the district court err by concluding that the informant's tip did not provide a sufficient basis to stop Magnuson?

2. Did the district court err by concluding that the implied-consent advisory violated Magnuson's due-process rights?

## ANALYSIS

### I.

The commissioner of public safety first challenges the district court's conclusion that Officer Sussman did not have a legal basis for the investigatory stop. We review de novo a district court's determination of the legality of an investigatory stop and questions of reasonable suspicion. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000); *see also Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn.App. 2000) (noting that the validity of a stop presents a purely legal question).

Under the Fourth Amendment, a police officer may conduct a limited stop to investigate suspected criminal activity if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Britton*, 604 N.W.2d at 87 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). A stop is lawful if the police officer has a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981)). The collective knowledge of the police may provide the basis for an investigatory stop.

*State v. Riley,* 568 N.W.2d 518, 523 (Minn. 1997). Under the doctrine of collective knowledge, the factual basis justifying the investigatory stop need not be known to the officer acting in the field. *Groe v. Comm'r of Pub. Safety,* 615 N.W.2d 837, 840 (Minn.App.2000), *review denied* (Minn. Sept. 13, 2000).

 The factual basis required to support an investigatory stop is minimal. *State v. McKinley,* 305 Minn. 297, 300, 232 N.W.2d 906, 909 (1975). It need not arise from the personal observations of the police officer but may be derived from information acquired from another person. *Marben v. State, Dep't of Pub. Safety,* 294 N.W.2d 697, 699 (Minn.1980). An informant's tip may be adequate to support an investigative stop if the tip has sufficient indicia of reliability. *Jobe,* 609 N.W.2d at 921. "Minnesota cases dealing with traffic stops based on informant tips have focused mainly on two factors: (1) identifying information given by the informant, and (2) the facts that support the informant's assertion that a driver is under the influence." *Id.* Identified citizen informants are presumed to be reliable. *Yoraway v. Comm'r of Pub. Safety,* 669 N.W.2d 622, 626 (Minn.App.2003). An officer may rely on information from an informant who also "provides sufficient information so that he may be located and held accountable for providing false information." *Playle v. Comm'r of Pub. Safety,* 439 N.W.2d 747, 748 (Minn.App.1989).

 When Officer Sussman stopped Magnuson, the informant had identified herself by name and provided her telephone number to the 911 dispatcher. This was sufficient information with which the police could locate the informant and hold her accountable, and we therefore conclude that the tip had sufficient indicia of reliability.

But whether the police were justified in stopping Magnuson depends not only on the reliability of the tip but also on the "nature of the information" provided. *See Yoraway,* 669 N.W.2d at 626. The informant told the 911 dispatcher that she was "at the VFW in Mound on Commerce Boulevard, and there's two gentlemen getting into two different vehicles and they are definitely drunk." The informant also identified herself, described the vehicles, and reported the license-plate number of one of the vehicles.

We have upheld investigatory stops based on informant tips when the informant provided less information than the informant provided here. In *Playle,* we held that a stop based on a Burger King employee's tip was lawful because the tip was reliable and was based on the personal observations of the informant. 439 N.W.2d at 748–49. The informant in *Playle* did not state why he believed that the driver was drunk, but this court upheld the stop because the police had "reason to believe the informant based his conclusion on personal observations." *Id.* at 749. Here, the police had reason to believe that the informant based her conclusion that Magnuson was "definitely drunk" on her personal observations because she reported that she was "at the VFW" and that Magnuson also had just been there and was getting into a vehicle.

That the informant described Magnuson as "definitely drunk" is also relevant. A tip that a driver is intoxicated, as opposed to possibly intoxicated, suggests that the tip was based on informant's personal observation. *City of Minnetonka v. Shepherd,* 420 N.W.2d 887, 889–90 (Minn.1988). Because of the certainty with which the informant described Magnuson's intoxication and because the informant reported that she was at the VFW, where Magnuson was getting into a car, we conclude

that the police had reason to believe that the informant's tip was based on personal observation. The investigatory stop, therefore, was legal, and the district court erred by concluding otherwise.

## II.

■■■ The commissioner of public safety next argues that the district court erred by concluding that the implied-consent advisory violated Magnuson's due-process rights because it did not warn him that driving with an alcohol concentration of .20 or more is an aggravating factor that might increase the penalty for the offense. Whether an implied-consent advisory violates a driver's due-process rights is a question of law, which this court reviews de novo. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn.2005). We will reverse a district court's conclusions of law only upon a determination that the district court "has erroneously construed and applied the law to the facts of the case." *Fehler v. Comm'r of Pub. Safety*, 591 N.W.2d 752, 754 (Minn.App.1999) (quotation omitted), *review denied* (Minn. July 28, 1999).

Minnesota law provides that when a person suspected of driving while impaired is asked to take a chemical test for intoxication, that person must be informed

(1) that Minnesota law requires the person to take a test:

(i) to determine if the person is under the influence of alcohol, controlled substances, or hazardous substances;

. . .

(2) that refusal to take a test is a crime;

(3) if the peace officer has probable cause to believe the person has violated the criminal vehicular homicide and injury laws, that a test will be taken with or without the person's consent; and

(4) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

Minn.Stat. § 169A.51, subd. 2(1)-(4) (2002). Officer Wiebusch read Magnuson an implied-consent advisory that contained the information required by section 169A.51, subd. 2. Magnuson's breath-test results showed that he had an alcohol concentration of .21. Because driving with an alcohol concentration of .20 or more is an aggravating factor, Magnuson was charged with third-degree driving while impaired, a gross misdemeanor under Minn.Stat. §§ 169A.03, subd. 3(2), .26, subd. 2 (2002).

■■■ We initially note that the district court erred by observing that a recent change in the driving-while-impaired statutes increased the severity of Magnuson's offense. The district court stated that Magnuson "was charged with a gross misdemeanor for a test result that would have been a misdemeanor if the offense had occurred before August 1, 2003."

Driving with an alcohol concentration of .20 or more has been a gross-misdemeanor offense since 1997. Minn.Stat. § 169.121, subds. 1(f), 3(c)(1) (Supp. 1997). In 2000, the Minnesota legislature amended the driving-while-impaired statute and made driving with an alcohol concentration of .20 or more an aggravating factor. Minn.Stat. § 169A.03, subd. 3(2) (2000). And under both the 2002 and 2003 versions of section 169A.26, the presence of an aggravating factor at the time of a driving-while-impaired violation makes the violation a third-degree offense, which is a gross misdemeanor. Minn.Stat. § 169A.26, subd. 1(a) (Supp. 2003); Minn.Stat. § 169A.26, subds. 1, 2 (2002). The 2003 amendment did not increase the penalty for driving with an alcohol concentration of .20 or

more, and the district court erred by, in part, basing its conclusion that Magnuson's due-process rights were violated on its observation that Magnuson would have been charged with a misdemeanor had the offense occurred before the 2003 amendment.

The district court also based its conclusion on *McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848 (Minn.1991). In *McDonnell,* the Minnesota Supreme Court held that an implied-consent advisory that "permitted police to threaten criminal charges the state was not authorized to impose" is a violation of the driver's due-process rights. *Id.* at 855. The district court concluded that the implied-consent advisory here, "which failed to advise [Magnuson] that a test result of .20 or more was a more serious criminal offense, was a violation of [Magnuson's] right to due process of law in that it failed to so advise him."

■ The implied-consent advisory read to Magnuson does not mention that driving with an alcohol concentration of .20 or more is an aggravating factor that can increase the criminal penalty for the offense. But "[t]he failure of the advisory to warn of every possible consequence does not violate fundamental fairness inherent in due process." *Catlin v. Comm'r of Pub. Safety,* 490 N.W.2d 445, 447 (Minn.App. 1992). In *Catlin,* we noted that the advisory accurately summarized the statutory language, and we held that although the advisory did not address the driver's specific situation, it did not violate his due-process rights. *Id.*

The advisory here accurately summarized the language in section 169A.51, subdivision 2. And by reading the advisory, Officer Wiebusch did not threaten charges that the state was not authorized to impose, as was held to be a violation of due process in *McDonnell. See McDonnell,*

473 N.W.2d at 855. Because due process does not require that the implied-consent advisory warn a driver of every possible consequence of taking or refusing to take a chemical test and because the advisory here was accurate and did not permit the police to threaten Magnuson with charges that the state may not impose, we conclude that there was no violation of Magnuson's due-process rights. The district court, therefore, erred by rescinding the revocation of Magnuson's driver's license.

## DECISION

Because the informant's tip was reliable and the police had reason to believe that it was based on her personal observations, the district court erred by concluding that the investigatory stop was illegal. And because the implied-consent advisory need not warn a driver that driving with an alcohol concentration of .20 or more is an aggravating factor that might increase the penalty for driving while impaired, the district court also erred by concluding that Magnuson's due-process rights were violated.

**Reversed.**