*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1703**

Gerald John Westman, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 25, 2014
Affirmed
Stauber, Judge**

Blue Earth County District Court
File No. 07CV102187

Shane C. Perry, Perry & Perry, P.L.L.P., Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jacob Fischmann, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

In an appeal from the district court's order sustaining the revocation of his driver's license under the implied-consent law for failing a breath test, appellant argues that (1) in upholding the stop, the district court relied only on the tip from a citizen-informant and ignored the testimony of the police officer as to his unimpaired driving conduct; (2) there

was no evidence of intoxication supporting the officer's expansion to administer field sobriety tests; (3) the officer lacked probable cause to arrest appellant for driving while intoxicated (DWI); (4) the breath-test evidence should not have been admitted because the police did not obtain a warrant and the state failed to prove that appellant validly consented to the search; and (5) the implied-consent law is unconstitutional. We affirm.

**FACTS**

On June 19, 2010, at approximately 11:22 p.m., Mankato Police Officer Steven Hoppe received a complaint from dispatch regarding a vehicle that was "swerving, [and] weaving on the road in front of the complaining party." The complaint was from an identified citizen informant who provided the police with his name, contact information, the location of the vehicle, and a description of the vehicle that included the vehicle's license-plate number. Officer Hoppe located the vehicle and followed it for about a mile until the vehicle exited the highway at a location where a vehicle stop would not endanger anyone. The driver of the vehicle was identified as appellant Gerald Westman.

Upon speaking with appellant, Officer Hoppe detected a faint odor of alcohol emanating from the vehicle and from appellant's person. Officer Hoppe also observed that appellant's eyes were watery and glassy and that his pupils were dilated. Because these observations indicated that appellant could be intoxicated, Officer Hoppe performed a "mini version of the [horizontal gaze nystagmus (HGN) test] with [appellant] seated in the vehicle." Officer Hoppe observed three to four clues while conducting this test indicating that appellant was likely intoxicated. Officer Hoppe asked appellant to exit the vehicle and conducted a full HGN test and observed "all six clues"

2

indicating alcohol impairment. Officer Hoppe also observed that appellant had good speech, normal reactions to instructions, and a polite attitude. Appellant consented to take a preliminary breath test (PBT). The test results showed an alcohol concentration of .127. Appellant was arrested for DWI and read the implied-consent advisory. Appellant consented to a breath test, which revealed an alcohol concentration of .10. Based on the result of the breath test, respondent Minnesota Commissioner of Public Safety revoked appellant's driver's license.

Appellant petitioned the district court to rescind the driver's-license-revocation order, arguing (1) that the stop of his vehicle was not based on reasonable suspicion; (2) he was arrested without probable cause; (3) the implied-consent law is unconstitutional on its face; and (4) his consent to alcohol-concentration testing was not voluntary because he was warned that failure to submit to testing was a crime. Following a hearing and after considering the parties' written memoranda, the district court denied appellant's petition, concluding that the stop and arrest were both lawful, appellant's consent to testing was valid, and the implied-consent law does not violate the constitution. This appeal followed.

**D E C I S I O N**

I.    **Lawfulness of the initial stop**

Appellant argues that Officer Hoppe's initial stop of appellant's vehicle was unlawful because the district court failed to consider that Officer Hoppe never observed

3

appellant's vehicle weave or violate any traffic laws.[1]  "We review a district court's determination regarding the legality of an investigatory traffic stop and questions of reasonable suspicion de novo."  *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010).  But "[w]e review the district court's findings of fact for clear error."  *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011).  "In accordance with the Fourth Amendment, a police officer may not stop a vehicle without a specific and articulable suspicion of a violation."  *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002).  Only a minimal factual basis is required to maintain the lawfulness of a routine traffic stop.  *Id.*  Reasonable suspicion is based upon an examination of the totality of the circumstances.  *O'Neill v. Comm'r of Pub. Safety*, 361 N.W.2d 471, 473 (Minn. App. 1985).  "[T]rained law-enforcement officers may make inferences and deductions that might well elude an untrained person."  *Id.* (quotation omitted).

Appellant asserts that Officer Hoppe lacked reasonable suspicion to stop appellant's vehicle, or that the suspicion based upon the informant's tip had dissipated, because Officer Hoppe followed appellant for one mile and did not personally observe anything suspicious about the vehicle or appellant's driving.  But an officer need not personally observe a traffic violation in order to justify a traffic stop.  *Marben v. State*,

---

[1] The state asserts that appellant waived this argument.  *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that matters not argued to and considered by the district court are not reviewable).  Although there is some confusion in the transcript, appellant did raise this issue to the district court in his written memorandum following the close of testimony.  And the district court addressed the argument thoroughly in its opinion.  Therefore, we conclude that the argument was not waived.

4

*Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980); *Rose*, 637 N.W.2d at 328. "An informant's tip may be adequate to support an investigative stop if the tip has sufficient indicia of reliability." *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005). There are two factors in determining the reliability of an informant's tip: "(1) identifying information given by the informant, and (2) the facts that support the informant's assertion that a driver is under the influence." *Id.* (quotation omitted). "Identified citizen informants are presumed to be reliable." *Id.* And an officer is entitled to rely upon information from an informant who provides his contact information so that "he may be located and held accountable for providing false information." *Id.* (quotation omitted).

In this case, the informant supplied police dispatch with his name and contact information and stated that he observed a black Ford F-150 swerving on the road and provided the vehicle's license-plate number as well as the vehicle's precise location and direction of travel.[2] Because the informant was an identified private citizen, the information is presumed reliable. *See Marben*, 294 N.W.2d at 699. Moreover, the informant supplied sufficient facts from which a reasonable officer could conclude that the driver of the suspected vehicle was impaired and that the informant personally saw the impaired driving conduct. *See Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921-22 (Minn. App. 2000) (informant's tip reliable where the informant provided his name and gave the location and direction of travel of the suspect vehicle). These facts are

---

[2] The only indication of what the informant said to the police is Officer Hoppe's testimony regarding what dispatch told him the informant said. The informant did not testify, and the informant's phone call to dispatch was never admitted as evidence.

sufficient to meet the minimal requirement of reasonable, articulable suspicion for a traffic stop. *See Marben*, 294 N.W.2d at 699 (discussing the "minimal" factual basis required for a traffic stop).

## II.    Lawfulness of the field sobriety testing and PBT

Appellant also argues that Officer Hoppe lacked reasonable suspicion to require appellant to submit to field sobriety testing and a PBT because the officer's observations of appellant were not inconsistent with characteristics of a sober person. Appellant asserts that he exhibited clear speech, that his pupils were dilated because it was dark outside, and that his eyes were watery because it was late, and he was tired. Appellant also asserts that Officer Hoppe's suspicion should have been dispelled when appellant stated that he had not been drinking.

"An initially valid stop may become invalid if it becomes intolerable in its intensity or scope." *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (quotation omitted). "[E]ach incremental intrusion during a stop must be strictly tied to and justified by the circumstances which rendered [the initiation of the stop] permissible." *Id.* (quotation omitted). Further intrusions must be justified by "(1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness." *Id.* at 365. During a traffic stop, an officer may not "disregard known facts dispelling the suspicion" that a crime is afoot. *State v. Fiebke*, 554 N.W.2d 755, 757 (Minn. App. 1996).

But Officer Hoppe testified that his observations of appellant confirmed his suspicions that appellant was driving while intoxicated. Officer Hoppe detected an odor of alcohol emanating from the vehicle and from appellant's person. He also observed

6

that appellant's eyes were watery and glassy and that his pupils were dilated, which are symptoms of a "central nervous system depressant" such as alcohol. Officer Hoppe asked appellant if he had been drinking, and appellant denied drinking, whereupon Officer Hoppe performed a quick HGN test and observed additional signs of intoxication. These observations taken together with the informant's observations of appellant's driving conduct support the officer's reasonable suspicion that appellant was driving while intoxicated. Moreover, Officer Hoppe testified that, in his professional experience, intoxicated drivers sometimes have clear speech and adequate balance, and that these factors do not necessarily dispel an officer's suspicion of intoxication. Therefore, because Officer Hoppe's observations were consistent with the original legitimate purpose of the stop, the continuation of the stop to require appellant to submit to field sobriety testing and a PBT was lawful.

### III.    Lawfulness of the arrest for DWI

Appellant also argues that Officer Hoppe lacked probable cause to arrest appellant for DWI because (1) evidence obtained as a result of the traffic stop cannot be considered because the officer lacked reasonable suspicion for the stop and (2) evidence obtained from the field sobriety tests and the PBT cannot be considered because the officer lacked reasonable suspicion to justify those tests. But as previously explained, Officer Hoppe's reasonable suspicion was justified by the informant's tip and by his observations of appellant, namely the odor of alcohol, the appearance of appellant's eyes, and the "mini" HGN test; therefore, evidence obtained from the field sobriety tests and the PBT may be considered.

A police officer may arrest a person for DWI without a warrant upon probable cause. Minn. Stat. § 169A.40, subd. 1 (2010). "Probable cause exists when all the facts and circumstances would warrant a cautious person to believe the suspect was driving or operating a vehicle while under the influence." *Andersen v. Comm'r of Pub. Safety*, 410 N.W.2d 17, 19 (Minn. App. 1987) (quotation omitted). Results of a PBT may be used to "assist . . . officers in making a probable cause determination." *Steele v. Comm'r of Pub. Safety*, 439 N.W.2d 427, 430 (Minn. App. 1989). Here, appellant's PBT result showed an alcohol concentration well over the legal limit. In addition, Officer Hoppe observed that appellant's eyes were watery and glassy, he exhibited signs of intoxication during the HGN tests, and an odor of alcohol emanated from his person. Taken together, these facts support a finding of probable cause to arrest for DWI. *See Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008) (odor of alcohol combined with PBT test results formed sufficient probable cause for DWI arrest); *Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 911 (Minn. App. 1986) (officer's observation that defendant had bloodshot and watery eyes, smelled of alcohol, and failed a preliminary breath test supported probable cause to arrest for DWI).

## IV. Admissibility of the breath test

Appellant also argues that breath-test evidence obtained after he was read the implied-consent advisory was not admissible because it was the product of unlawful coercion and because the police lacked a warrant for the search. Searches conducted without a warrant are presumed unreasonable, subject to only a few well-delineated and established exceptions. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992). But

8

consent, where freely and voluntarily given, is a recognized exception to the warrant requirement. *Diede*, 795 N.W.2d at 846. "Whether consent was voluntary is determined by examining the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* (quotation omitted). "Consent is not involuntary merely because the circumstances of the encounter are uncomfortable for the person being questioned." *Id.* (quotation omitted). The voluntariness of consent to a search is a question of fact, which this court reviews for clear error. *Id.* The state bears the burden of showing that appellant's consent to the breath test for alcohol content was voluntary. *See State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994) (stating that "the burden of proof is on the prosecutor to show that the search and seizure was within the individual's voluntary consent").

Appellant argues that the state failed to present sufficient evidence to show that appellant voluntarily consented to the breath test, and that the evidence shows that appellant did not consent but rather submitted to the officer's claim of lawful authority. *See State v. Howard*, 373 N.W.2d 596, 599 (Minn. 1985) ("Mere acquiescence on a claim of police authority or submission in the face of a show of force is, of course, not enough."). Appellant testified that, had he not been advised that refusing to submit to a test was a crime, he would not have consented to take a test. But the implied-consent advisory, without more, does not amount to coercion so as to render a suspect's consent invalid. *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013). That is because the law gives individuals the choice to refuse to take an alcohol-concentration test, even though test refusal comes with penalties. *Id.* at 571. Being asked to take an alcohol-

concentration test after being arrested and told that test refusal is a crime does not mean that a suspect is "coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation omitted).

In this case, the record shows that appellant was read the implied-consent advisory and stated that he understood its meaning. Appellant was asked whether he wanted to consult an attorney before making a decision, and appellant declined. Appellant then consented to a breath test. Appellant was stopped around 11:30pm and the breath test occurred at the police station shortly after midnight. On these facts, we conclude that appellant's consent was voluntary. *See Brooks*, 838 N.W.2d at 571-72 (suspect who was read the implied consent advisory and was not detained for a long period of time voluntarily consented to alcohol-concentration testing). Accordingly, we do not consider the state's alternative argument that appellant's consent was implied by law.

**V.     Constitutionality of the implied-consent law**

Appellant argues that the implied-consent statute is unconstitutional because it "impl[ies] consent where none is actually given" and because it "criminaliz[es] a motorist's refusal to consent to a test that . . . requires a search warrant." But in this case appellant's consent was not implied, nor was he convicted of test refusal. We have concluded, based upon the totality of the circumstances, that appellant voluntarily consented to an alcohol-concentration test, and that his consent was not coerced even though refusal to comply with testing may be penalized. Therefore, we do not conclude that appellant's consent is derived solely by law. Because appellant is required to demonstrate a direct injury when challenging the constitutionality of a statute, and

10

because we do not adjudicate "abstract questions" or "generalized grievances," we decline to consider appellant's constitutional arguments. *See Hanson v. Woolston*, 701 N.W.2d 257, 262 (Minn. App. 2005), *review denied* (Minn. Oct. 18, 2005); *see also League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 645 n.7 (Minn. 2012) (stating that appellate courts may raise standing sua sponte because it is a jurisdictional question).

**Affirmed.**