*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0710**

Ryan Paul Jirik, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed November 21, 2016
Affirmed
Johnson, Judge**

Rice County District Court
File No. 66-CV-15-2433

Charles A. Ramsay, Daniel J. Koewler, Jay S. Adkins, Ramsay Law Firm, Roseville, Minnesota (for respondent)

Lori Swanson, Attorney General, Amy J. Tripp-Steiner, Dominic J. Haik, Assistant Attorneys General, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Ryan Paul Jirik's driver's license after he was arrested for driving while impaired and failed a urine test. Jirik petitioned for the rescission of the revocation on the ground that the arresting officer read him an implied-

consent advisory that inaccurately informed him that he would commit a crime if he refused to submit to a urine test. The district court granted the petition on the grounds that the advisory was misleading and that Jirik did not give valid consent to a warrantless urine test. We conclude that the district court did not err by concluding that the advisory was misleading. Therefore, we affirm.

## FACTS

On July 10, 2015, Lonsdale police officer Anthony Malepsy stopped a vehicle that appeared to be speeding. Jirik was the driver of that vehicle. Officer Malepsy arrested Jirik for driving while impaired (DWI).

At the county jail, Officer Malepsy used a form document prepared by the department of public safety to provide Jirik with the statutorily required implied-consent advisory. *See* Minn. Stat. § 169A.51, subd. 2(a) (2014). The advisory informed Jirik that "Minnesota law requires you to take a test to determine if you are under the influence of alcohol" and that "[r]efusal to take a test is a crime." Officer Malepsy then asked Jirik to submit to a urine test. Officer Malepsy had not obtained a warrant for a search of Jirik's urine. Jirik agreed to provide a urine sample and did so. The result of the urine test was an alcohol concentration of 0.09.

The commissioner of public safety revoked Jirik's driver's license, as required by statute. *See* Minn. Stat. § 169A.52, subd. 4(a), (c) (2014). Jirik filed a petition in the district court, seeking the rescission of the revocation of his driver's license. *See* Minn. Stat. § 169A.53, subd. 2 (2014). The district court conducted a hearing in December 2015 at which the commissioner called Officer Malepsy as a witness.

2

In a post-hearing memorandum, Jirik argued, in part, that the revocation of his driver's license should be rescinded on the ground that the implied-consent advisory informed him that he would commit a crime if he did not submit to a urine test. Jirik argued that the implied-consent advisory was misleading because, under the Fourth Amendment, a law-enforcement officer may not conduct a search of a person's urine without a warrant and, consequently, the officer threatened a prosecution that the state could not lawfully commence or pursue.

In response, the commissioner argued that the district court should deny Jirik's petition on the grounds that Jirik expressed valid consent to the search, that Jirik impliedly consented to the search as a condition of obtaining a driver's license, and that a warrantless urine test following a DWI arrest satisfies the Fourth Amendment's reasonableness requirement. The commissioner also argued that the results of the urine test should not be suppressed because the implied-consent statute is not unconstitutional, because the implied-consent advisory was not misleading, and because of the good-faith exception to the exclusionary rule of the Fourth Amendment.

In March 2016, the district court issued an order in which it granted Jirik's petition and rescinded the revocation of his driver's license. The district court analyzed the parties' respective arguments in an attached memorandum. The most pertinent part of the district court's analysis is as follows:

> In the last year, implied consent law in Minnesota has been in a state of flux. In one of the most recent decisions the Minnesota Court of Appeals held that a warrantless urine test following an arrest for suspicion of driving while intoxicated cannot be justified under the search-incident to arrest

3

exception. *State v. Thompson*, ____ N.W.2d ____, 2015 WL 9437538 (Minn. App. Dec. 28, 2015). Previously, the U.S. Supreme Court held that a warrantless test cannot be justified by a per se exigency exception. *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). These cases in effect eliminated the two applicable exceptions to the Fourth Amendment's warrant requirement, leaving consent as the only available justification for a warrantless search in this context.

Based on this recent jurisprudence, refusing a warrantless urine test is no longer a crime. However, in spite of that fact, the advisory read to Mr. Jirik still stated, "Minnesota law requires you to take a test . . . . Refusal to take a test is a crime." Thus, in this case, Mr. Jirik was threatened with a criminal charge if he refused the test which the State was not authorized to bring. The Minnesota Supreme Court has consistently noted its concern that law enforcement officials not mislead individuals with respect to their obligation to undergo blood and alcohol testing. *McDonnell v. Commissioner of Public Safety*, 473 N.W.2d 848, 853 (Minn. 1991). Indeed, in *McDonnell*, the court held that an implied consent advisory that allows police to threaten criminal charges the State cannot bring violates the constitutional guarantee of due process. *Id.* at 855. Based on the misleading advisory that was read to Mr. Jirik, this court finds Mr. Jirik could not have provided truly voluntary consent when confronted with a false dilemma between (1) consenting to a warrantless urine test that would incriminate him and (2) facing criminal penalties for refusing to consent to a test the State could not constitutionally take. The Commissioner has not met its burden of proving that the totality of the circumstances shows Mr. Jirik freely and voluntarily consented to the urine test. Consequently, the urine test obtained from Mr. Jirik was a warrantless search in violation of the Fourth Amendment.

The district court also rejected the commissioner's request for application of the good-faith exception to the exclusionary rule. The commissioner appeals.

4

## D E C I S I O N

The commissioner argues that the district court erred by granting Jirik's petition for the rescission of the revocation of his driver's license.

### A.

We begin by reciting the parties' respective arguments and framing the appropriate issue or issues for appellate review.

In her principal brief, the commissioner makes two arguments. First, she argues that the warrantless search of Jirik's urine did not violate the Fourth Amendment because the implied-consent statute is not unconstitutional, because Jirik consented to the warrantless search, and because Jirik was not criminally prosecuted for refusing to submit to a urine test. Second, she argues that the good-faith exception to the exclusionary rule applies because Officer Malepsy "was acting in conformity with binding case law at the time of the arrest." The commissioner's principal brief does not argue that the district court erred by determining that the implied-consent advisory was misleading.

In his responsive brief, Jirik makes two arguments. First, he argues that the implied-consent advisory was misleading because he could not lawfully be criminally prosecuted for refusing to submit to a urine test and that the misleading nature of the advisory violated his right to due process. Second, he argues that the good-faith exception to the exclusionary rule does not apply because the exclusionary rule itself applies only to a violation of the Fourth Amendment and not to a violation of the right to due process. Jirik does not respond to the commissioner's argument that he validly consented to the warrantless search of his urine.

In her reply brief, the commissioner makes two arguments. First, she argues that a law-enforcement officer does not violate the Fourth Amendment by conducting a warrantless search of an arrested person's urine because such a search is within the search-incident-to-arrest exception to the warrant requirement. Second, she argues that a recent opinion of the United States Supreme Court suggests that the exclusionary rule does not apply in a civil license-revocation proceeding. The commissioner's reply brief does not attempt to rebut Jirik's argument that the district court properly determined that his right to due process was violated because the implied-consent advisory was misleading.

The parties' arguments are incongruous. In general, the commissioner focuses on the Fourth Amendment, while Jirik focuses on the right to due process. In deciding which issue to address before the other, we note that Jirik is the party who commenced this action by petitioning the district court for the rescission of the revocation of his driver's license. A person seeking judicial review under the implied-consent statute has an obligation to identify the ground or grounds on which relief should be granted. Minn. Stat. § 169A.53, subd. 2(b)(3) (2014); *Eckstein v. Commissioner of Pub. Safety*, 471 N.W.2d 114, 116 (Minn. App. 1991), *review denied* (Minn. Aug. 1, 1991). In Jirik's petition, he alleged two grounds for relief, including a claim that his right to due process was violated by a misleading implied-consent advisory. He followed up by thoroughly briefing that issue to the district court in his post-hearing memorandum, and he has thoroughly briefed that issue in this court. This court recently stated that if a person challenges an implied-consent advisory on due-process grounds, a court must consider the argument by applying the caselaw concerning the right to due process, even if the opposing party has relied on Fourth

6

Amendment principles. *Johnson v. Commissioner of Pub. Safety*, ___ N.W.2d ___, ___, 2016 WL 6570284, at *3-6 (Minn. App. Nov. 7, 2016). Thus, it is appropriate to first consider Jirik's argument that the implied-consent advisory was misleading. We do so by applying a *de novo* standard of review. *See id.* at *6.

**B.**

Jirik's argument that the implied-consent advisory was misleading is based on the right to due process. A state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* Minn. Const. art. I, § 7. In *Raley v. Ohio*, 360 U.S. 423, 79 S. Ct. 1257 (1959), four persons were convicted of crimes for refusing to answer questions asked of them by a legislative commission. *Id.* at 426-31, 437-39, 79 S. Ct. at 1260-63, 1266-67. They refused to answer questions after members of the legislative commission informed them that they could assert the right against self-incrimination. *Id.* at 437-39, 79 S. Ct. at 1266-67. The United States Supreme Court reasoned that the convictions arose from "the most indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State clearly had told him was available to him." *Id.* at 438, 79 S. Ct. at 1266. The Court concluded, "We cannot hold that the Due [P]rocess Clause permits convictions to be obtained under such circumstances." *Id.* at 439, 79 S. Ct. at 1267.

In *McDonnell v. Commissioner of Public Safety*, 473 N.W.2d 848 (Minn. 1991), the Minnesota Supreme Court applied *Raley* to a driver's claim that she had received a misleading implied-consent advisory. *Id.* at 854-55. The driver argued that her right to due process was violated because "she was threatened with potential criminal penalties that

7

could not possibly have been imposed on her." *Id.* at 853. Specifically, she argued that the advisory was inaccurate "because her drivers license had not previously been revoked," which, at that time, was a prerequisite for a prosecution for refusing to submit to chemical testing. *Id.* (citing Minn. Stat. § 169.123, subd. 2(b)(2) (1990)). The supreme court analyzed her argument by stating the general principle that "due process does not permit those who are perceived to speak for the state to mislead individuals as to either their legal obligations or the penalties they might face should they fail to satisfy those obligations." *Id.* at 854. The supreme court reasoned that the driver's right to due process was violated because the advisory "permitted police to threaten criminal charges the state was not authorized to impose." *Id.* at 855. As a consequence, the supreme court concluded that the commissioner's revocation of the woman's driver's license should be rescinded. *Id.* The supreme court and this court have applied *McDonnell* on several occasions to arguments challenging the accuracy of an implied-consent advisory. *See, e.g.*, *Davis v. Commissioner of Pub. Safety*, 517 N.W.2d 901, 903-04 (Minn. 1994); *Poeschel v. Commissioner of Pub. Safety*, 871 N.W.2d 39, 47 (Minn. App. 2015); *Magnuson v. Commissioner of Pub. Safety*, 703 N.W.2d 557, 562 (Minn. App. 2005); *Moe v. Commissioner of Pub. Safety*, 574 N.W.2d 96, 98 (Minn. App. 1998), *review denied* (Minn. Apr. 14, 1998); *Catlin v. Commissioner of Pub. Safety*, 490 N.W.2d 445, 446-47 (Minn. App. 1992).

This court applied *McDonnell* most recently in a case in which the driver made the same argument that Jirik makes in this case. In *Johnson*, the driver argued that the implied-consent advisory that he received was misleading because it threatened criminal charges if

8

he refused to submit to a urine test. 2016 WL 6570284, at *2. Johnson's argument was based on *State v. Thompson*, in which both this court and the supreme court held that a warrantless search of the urine of a driver who has been arrested for DWI is not within the search-incident-to-arrest exception to the warrant requirement. *See Thompson*, 873 N.W.2d 873, 877-79 (Minn. App. 2015), *aff'd*, ___ N.W.2d ____, ____, 2016 WL 5930162, at *2-8 (Minn. Oct. 12, 2016). In *Johnson*, we held that, in light of *Thompson*, the implied-consent advisory was misleading because the state could not lawfully prosecute the driver for refusing to submit to a warrantless urine test. *Johnson*, 2016 WL 6570284, at *7-10. As a consequence, we affirmed the district court's rescission of the revocation of Johnson's driver's license. *Id.* at *10-13.

In this case, Officer Malepsy advised Jirik that refusal to submit to chemical testing is a crime and asked him to submit to a urine test. But a urine test was not permitted by the Fourth Amendment, absent Jirik's consent, because Officer Malepsy had not obtained a search warrant. *See Thompson*, 2016 WL 5930162, at *4-8. Because Officer Malepsy could not lawfully conduct a warrantless search of Jirik's urine, Jirik could not have been criminally prosecuted for refusing to submit to such a test. *See Thompson*, 2016 WL 5930162, at *8. The district court recognized as much, stating that Jirik "was threatened with a criminal charge . . . which the State was not authorized to bring." The district court was correct in determining that the implied-consent advisory that Jirik received was misleading. *See McDonnell*, 473 N.W.2d at 855; *Johnson*, 2016 WL 6570284, at *13. Because the advisory was misleading, Jirik's right to due process was violated. *See McDonnell*, 473 N.W.2d at 855; *Johnson*, 2016 WL 6570284, at *13. The remedy for the

9

violation of Jirik's right to due process is the rescission of the revocation of his driver's license. *See McDonnell*, 473 N.W.2d at 855; *Johnson*, 2016 WL 6570284, at *13.

## C.

We next turn to the first argument in the commissioner's principal brief, in which she argues that the warrantless search of Jirik's urine complied with the Fourth Amendment. Before considering the merits of that argument, we consider whether the argument is material in light of our conclusion that Jirik's right to due process was violated and that the remedy for that due-process violation is the rescission of the revocation of his driver's license.

If we were to conclude that the district court erred by determining that the urine test was conducted in violation of the Fourth Amendment, Jirik nonetheless would be entitled to rescission because of the violation of his right to due process. And if we were to conclude that the district court correctly determined that the urine test was conducted in violation of the Fourth Amendment, Jirik also would be entitled to rescission because of the violation of his right to due process and presumably also because of the violation of his Fourth Amendment rights. In either event, Jirik would be entitled to the rescission of the revocation of his driver's license. Thus, we need not analyze the commissioner's argument that the warrantless search of Jirik's urine complied with the Fourth Amendment.[1]

---

[1]Although we need not review the district court's Fourth Amendment analysis, we question whether it is consistent with supreme court caselaw. In *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), the supreme court stated, "Whether consent is voluntary is determined by examining the totality of the circumstances," which include "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* at 568-69 (quotations omitted).

10

**D.**

We last turn to the commissioner's argument that the exclusionary rule does not apply in this case. The commissioner asserts two reasons. First, she argues that the exclusionary rule generally does not apply in a civil license-revocation proceeding in light of *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Second, she argues that the good-faith exception to the exclusionary rule is triggered in this case because Officer Malepsy "was acting in conformity with binding case law at the time of the arrest."

The commissioner's arguments concerning the exclusionary rule are inapplicable in light of our resolution of the parties' respective arguments concerning whether Jirik's rights were violated. The exclusionary rule is a judicially created remedy for a violation of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655-56, 81 S. Ct. 1684, 1691-92 (1961); *State v. Lindquist*, 869 N.W.2d 863, 868-69 (Minn. 2015). If we were to recognize a violation of the Fourth Amendment, the commissioner's arguments would be pertinent. But we have affirmed the district court's grant of relief on the ground that Jirik's right to due process was violated. The remedy for a violation of the right to due process in a civil license-revocation case is not the exclusion of evidence but, rather, the rescission of the

---

The district court in this case did not perform a totality analysis. The district court noted the misleading nature of the implied-consent advisory and the right to due process and then made a finding that Jirik "could not have provided truly voluntary consent when confronted with a false dilemma between (1) consenting to a warrantless urine test that would incriminate him and (2) facing criminal penalties for refusing to consent to a test the State could not constitutionally take." It appears that the district court combined due-process principles with Fourth Amendment principles and concluded that Jirik's consent was invalid as a matter of law, without making a finding as to whether the misleading nature of the advisory caused Jirik's consent to be involuntary as a matter of fact.

11

revocation of the petitioner's driver's license. *See McDonnell*, 473 N.W.2d at 855; *Johnson*, 2016 WL 6570284, at *13. The good-faith exception to the exclusionary rule is inapplicable because the exclusionary rule itself is inapplicable.

In sum, the district court did not err by finding that the implied-consent advisory that Jirik received was misleading, by determining that the misleading advisory violated Jirik's right to due process, and by concluding that Jirik is entitled to the rescission of the commissioner's revocation of his driver's license.

**Affirmed.**