*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0120**

State of Minnesota,
Respondent,

vs.

Gregory Walter Bakke,
Appellant.

**Filed January 3, 2017
Affirmed
Reilly, Judge**

Cass County District Court
File No. 11-CR-15-217

Lori Swanson, Attorney General, Matthew G. Frank, Karen B. McGillic, Assistant Attorneys General, St. Paul, Minnesota; and

Christopher J. Strandlie, Cass County Attorney, Walker, Minnesota (for respondent)

Cathyrn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**UNPUBLISHED OPINION**

**REILLY**, Judge

While responding to a 911 call reporting a dark-colored SUV fleeing a vehicle collision, a Pine River police officer stopped a dark-colored Jeep Cherokee with front-end

damage on suspicion that the vehicle was involved in the hit-and-run accident. The question presented on appeal is whether, under the totality of the circumstances, the Pine River police officer had a reasonable, articulable suspicion to justify the investigatory stop of appellant Gregory Walter Bakke's vehicle. Because we conclude that he did, we affirm.

## D E C I S I O N

**I.      The district court did not err by denying Bakke's motion to suppress the evidence obtained as a result of the investigatory stop.**

Bakke first contends that the district court committed reversible error by denying his motion to suppress evidence obtained as a result of the investigatory stop, arguing the officer lacked reasonable, articulable suspicion to justify the stop.

"When reviewing pretrial orders on motions to suppress evidence," this court may "independently review the facts and determine, as a matter of law, whether the district court erred by suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999) (quotation omitted). This court reviews the district court's factual findings for clear error and its legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006).

The United States and Minnesota Constitutions protect the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Subject to only a few exceptions, warrantless searches are per se unreasonable. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967). An investigatory stop is one exception to the warrant requirement. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)).

2

A limited investigatory stop permits an officer to temporarily detain a suspect if (1) "the stop was justified at its inception by reasonable articulable suspicion" and (2) "the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop." *Id.* (quotations omitted). Reasonable suspicion must be based on "specific, articulable facts" that permit the officer to articulate his or her "particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). When assessing this standard, appellate courts consider the totality of the circumstances, recognizing that the "special training of police officers may lead them to arrive at inferences and deductions that might well elude an untrained person." *State v. Askerooth*, 681 N.W.2d 353, 369 (Minn. 2004) (quotations omitted).

The factual basis that is required to justify an investigatory stop is minimal. *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn. App. 2005). It does not require the officer show an actual violation of the vehicle or traffic laws. Rather, an investigatory stop is valid if it "was not the product of mere whim, caprice, or idle curiosity, but was based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (quotations omitted). "It need not arise from the personal observations of the police officer but may be derived from information acquired from another person." *Magnuson*, 703 N.W.2d at 560. An informant's tip may justify an investigatory stop if the tip has "sufficient indicia of reliability." *Id.* To determine whether this standard is satisfied, appellate courts consider (1) the sufficiency of the identifying

3

information supplied by the informant and (2) the adequacy of the facts supporting the informant's assertion that the suspect engaged in illegal activity. *Id.* This court considers both factors under the totality of the circumstances, and neither factor is independently dispositive. *Rose v. Comm'r of Pub. Safety*, 637 N.W.2d 326, 328 (Minn. App. 2001), *review denied* (Minn. Mar. 19, 2002).

When evaluating the first factor, this court differentiates between identifiable and anonymous informants. *Id.* "Identified citizen informants are presumed to be reliable," *Magnuson*, 703 N.W.2d at 560, and officers may rely on the information an informant provides if the informant also "provides sufficient information so that he may be located and held accountable for providing false information." *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748 (Minn. App. 1989). Here, the 911 caller reported a dark-colored SUV-type vehicle hit his wife's car and fled the scene. Although the caller did not provide the license plate number of the vehicle involved, he identified himself, and his wife, by name. He also provided his phone number and his wife's license plate number to the dispatcher. This is sufficient identifying information to ensure the informant's identity may be traced and to hold him accountable for providing false information. *Id.*

But whether the officer was justified in stopping Bakke depends on "the nature of the information" provided, as well as the reliability of the tip. *Magnuson*, 703 N.W.2d at 560 (quotation omitted). The informant identified the location of the accident and provided a description of the vehicle. He also specified the street on which the vehicle was traveling and the direction in which it fled. The responding officer corroborated this information when he observed the damaged vehicle parked at the scene of the alleged accident and

4

observed a westbound dark-colored SUV-like vehicle with "fresh" front-end damage within ten minutes and four miles of the accident.

Because the caller's tip had sufficient indicia of reliability and gave the officer an objective basis for suspecting that the vehicle stopped was involved in the hit-and-run accident, the officer's limited investigatory stop was justified. Thus, the district court did not err by denying Bakke's motion.

Bakke nonetheless challenges the validity of the stop, arguing that the "generalized description of the vehicle involved in the hit-and-run" accident did not articulate facts sufficient to justify the stop of his vehicle. In Minnesota, a valid investigatory stop may be based on "the reliability of the informant, the description of the vehicle, the reported location of the vehicle, the officer's observation of traffic violations, and the time lag between the report of criminal activity and the stop." *State v. Warren*, 404 N.W.2d 895, 897 (Minn. App. 1987). A generalized description of a vehicle, when considering the totality of the circumstances, does not bar officers from instigating limited investigatory stops of similar looking vehicles. *See State v. Waddell*, 655 N.W.2d 803, 807-10 (Minn. 2003). In *Waddell*, the Minnesota Supreme Court clarified that, because courts give "considerable discretion" to an officer's decision to initiate an investigatory stop, courts do not consider an officer's decision to stop a "vehicle very similar in body style" that varies slightly in color to be "mere caprice or whim." *Id.* at 810. It is also well-established that an officer's personal observations, coupled with police dispatch information, may provide a sufficient particularized and objective basis to suspect the driver is engaged in criminal activity. *State v. Richardson*, 622 N.W.2d 823, 826 (Minn. 2001).

Here, the district court properly found, and the record clearly supports, that the officer had "a reasonable articulable suspicion" to stop Bakke's vehicle—the stop was not pretextual. In its order denying Bakke's suppression motion, the district court found that: (1) the responding officer drove toward the accident scene, where he observed the damaged vehicle parked; (2) after driving almost four miles, the officer observed a dark-colored SUV with front-end damage; (3) before conducting the investigatory stop, the officer asked dispatch if the suspect vehicle may have front-end damage and dispatch confirmed that front-end damage would be consistent with the vehicle described in the 911 call; and (4) approximately ten minutes elapsed between the officer's receipt of the dispatch call and the stop of the vehicle.

We therefore conclude that the officer had a reasonable basis to stop Bakke's vehicle. Accordingly, the district court did not err by denying Bakke's motion to suppress.

## II. Appellant's pro se arguments are forfeited.

In his pro se supplemental brief, Bakke also challenges the constitutionality of the investigatory stop, arguing that (1) the time stamps from each recording system show the district court's factual findings are clearly erroneous and (2) the officer stopped his car based on a "mere hunch" that the vehicle was involved in a recent burglary. Because Bakke fails to support these supplemental arguments with legal authority, these arguments are forfeited. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) ("We will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority."); *see also State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2012) (deeming pro se argument that included "no argument or citation to legal authority" forfeited).

Even if these arguments were properly supported by legal authority, Bakke's contentions are meritless. In its order denying Bakke's suppression motion, the district court found that "the differing time stamps on the dispatch notes and on the squad camera result from different systems not being synchronized." Despite this finding, the district court determined that the disparity did not affect its conclusion. Moreover, after considering the time discrepancy, Bakke's testimony, testimony regarding a separate burglary investigation, and the squad camera footage, the district court determined, and the record clearly shows, that the stop was not pretextual.

**Affirmed.**